## ABEL BARRON *v.* JOHN PETTES.

If the cause for taking a deposition be certified in the caption in these words, " The deponent *being* more than thirty miles from the place of trial," (instead of *living,*) the deposition is inadmissible; and the defect cannot be supplied by intendment, nor by the body of the deposition.

The act of a magistrate, in another state, in taking a deposition, is to be considered as *prima facie* evidence, both of his official character and of the regularity of the proceedings; and the deposition will be admitted in evidence, unless the contrary is shown.

It is not important, whether a deponent is sworn before he gives his evidence, or whether he swears to the deposition, after it is made up by the magistrate.

Where payment of the amount collected by a deputy sheriff upon an execution is demanded of the deputy by an agent of the execution creditor, and the deputy promises to pay the amount at a future time, he cannot, on an action being commenced against the sheriff for the money, òbject that no evidence was shown to him, at the time the demand was made, of the authority of the agént to make the demand and receive the money.

In this case judgment was rendered in the county court against a sheriff, for neglect in not paying money collected upon an execution, for the amount of the execution and fifteen *per cent.* interest from the time the demand was made. Exceptions were taken in the case, and the execution was stayed by the county court, and the case passed to this court,—where the judgment was affirmed. And the clerk, in making up the damages, was directed to allow to the plaintiff fifteen *per cent.* interest, from the time of judgment in the county court, upon so much of ·the damages there recovered, as consisted of money detained by the sheriff, and six *per cent.* upon the residue; REDFIELD, J., dissenting.

TRESPASS ON THE CASE against the defendant, as sheriff of the county of Windsor, for not paying to the plaintiff money collected by one Nichols, a deputy of the defendant, upon an execution in favor of the plaintiff. Judgment was rendered against the defendant by default, and the case came on for the assessment of damages by the jury,—HEBARD, J., presiding.

The plaintiff offered in evidence the deposition of one Jennings; to the admission of which the defendant objected, for the alleged reasons, that the caption and certificate were informal, that the

49

deposition was improperly taken, that it did not appear that the deponent was sworn to the deposition, and that it did not appear, that the officer, by whom the deposition was taken, had authority to take depositions. The deposition purported to be taken in the State of Ohio, by Roswell Marsh, "Master Commissioner in Chancery of the supreme court of the State of Ohio and of the court of common pleas" in and for the county in which it was taken, and commenced in these words,—"Zerah Jennings, a witness of lawful age, being by me sworn to testify the truth, the whole truth, and nothing but the truth, deposes and says," &c.; and there was no other certificate of the oath appended to the deposition, except what was contained in the caption, which, after following the form prescribed by statute, proceeded as follows;—"I hereby certify, that 'I am a Master Commissioner in Chancery of the Supreme Court 'and Court of Common Pleas in and for the county of Jefferson and 'State of Ohio, duly qualified, and as such legally authorized to 'administer oaths and take depositions, and that Zerah Jennings 'was by me duly sworn to testify the truth, the whole truth, and 'nothing but the truth, in the above named cause," &c.

The plaintiff then offered in evidence the deposition of Roswell Marsh, to prove that the deposition of Jennings was taken according to the laws of the State of Ohio. The cause of taking the deposition was stated in the caption in these words,—"The deponent being more than thirty miles from the place of trial, and without the State of Vermont." This deposition, also, was objected to by the defendant, but was admitted by the court, and thereupon the deposition of Jennings was also admitted.

It was stated by Jennings, in his deposition, that in March, 1839, the plaintiff instructed him to call upon the defendant's deputy, Nichols, for the money which he had collected on the execution described in the declaration; that the witness did as he was directed; and that Nichols did not pay the money, but said that he would pay it to the plaintiff the next week, and sent a letter by the witness to the plaintiff, containing the same promise. And this letter was produced on the trial. It appeared, that Nichols had collected the money prior to the time of the demand being made by Jennings; and the plaintiff claimed to recover the full amount of the execution and fifteen *per cent.* interest from that time.

Barron *v.* Pettes.

The defendant requested the court to charge the jury, that the defendant was not liable to pay interest at the rate of fifteen *per cent.*, unless it was proved, not only that Jennings had authority from the plaintiff to receive the money, but that he so informed Nichols, or in some way showed to him, that he had such authority. But the court instructed the jury, that, unless Nichols, at the time Jennings called on him for the money, refused to pay it to him on the ground that he had not authority to receive it, it was too late for him to make that objection; but that if Jennings had in fact. authority from Barron to receive the money of Nichols, and Nichols refused to deliver it, without assigning a good reason, the jury must return a verdict for the plaintiff, for the amount of the execution and interest at the rate of fifteen *per cent.* from the time the demand was made by Jennings.

Verdict for plaintiff, for the amount of the execution and fifteen *per cent.* interest from March, 1839.   Exceptions by defendant.

*Tracy & Converse* for defendant.

*E. Hutchinson* for plaintiff.

The opinion of the court was delivered by

REDFIELD, J.   The first question in the case is in regard to the admission of the deposition of Roswell Marsh.  Saying nothing of other objections to this deposition, the cause of taking, certified by the magistrate, is, " The deponent *being* (instead of *living*) more than thirty miles from the place of trial."  This has always been held fatal; and the defect cannot be supplied by conjecture, or intendment, nor by the body of the deposition; but the fact of residence must be *certified* by the magistrate.   *" Being "* and *" living,"* are words of very different import, with reference to this subject.

But we do not think, that this deposition is at all important to the determination of the case.  Since the decision by this court, in *Danforth* v. *Reynolds*, 1 Vt. 259, that the authority of the magistrate to take depositions and the fact that a deposition was taken according to the law of the place of taking might be determined by the court upon their own knowledge, or upon the introduction of parol evidence upon the point, or in any other way, which satisfies

the court, the practice has been to consider the act of the magistrate as *prima facie* evidence, both of his official character and of the regularity of the proceedings.  This is no more, than we are compelled to do in regard to many documents from other States, when produced in our courts.  A judgment rendered in a foreign State is always presumed to have been rendered according to the law of that State ; and we also presume, that the judges of the court were properly appointed and sworn.  Similar *presumptions* are constantly made, in order to receive and act upon the judicial proceedings of the other American States.  If a different course were pursued, it would lead to inextricable confusion ; and questions of this kind would be differently decided, according to the different degrees of *knowledge* of different judges, of the laws of other states.

The certificate of the oath varies only in mere matter of form from that prescribed by the statute.  We do not think it important, whether the deponent is sworn before he gives his evidence, as is the practice in chancery, and in many of the States as to all depositions, or whether he swears to the deposition after it is made up by the magistrate.

The evidence of a demand of the money of the defendant's deputy appears to be ample.  The plaintiff's agent, *in fact,* made the demand ; and the deputy did not doubt his agency, but, on the contrary, expressly recognized it, and promised to pay the money the next week, and so wrote to the plaintiff.  We think, that the charge of the court, upon this point, was correct, that, after this, " it was too late for the defendant to object to the sufficiency of the demand," upon the ground that he had no *assurance* of the agent's authority.

When a demand is made of a person, he may remain silent; and that will not amount to a waiver of any objection, which he may be able to show to the demand at the trial.  But if he assign *any* excuse, that will usually be considered a waiver of any other objections,—which might have been obviated, if they had been insisted upon.  But in this case the deputy expressly waived all objections by *promising to pay.*  The charge, we think, puts the case upon this ground.  If what was said by the judge as to the defendant's being liable to pay the money and fifteen *per cent.* interest, if, when demanded, he refused to pay it, *without assigning a good reason,*

Barron v. Pettes.

had been all that was said by the court, it might have been calculated to mislead the jury ; but, taken in connection with what was said before and the testimony in the case, it could have no such effect, although, perhaps, not well expressed. It was rather stating the law in general, than with reference to this particular case ; for in this case there was no evidence tending to show, that any excuse was made by the deputy.

Judgment affirmed.

NOTE by REDFIELD, J.    After the opinion of the court was delivered, a motion was made by the counsel for the plaintiff, that the clerk should be directed to add interest to the judgment of the county court at the rate of fifteen *per cent.* I expressed myself, at the time, averse to the allowance of any such rate of interest upon judgments of the county court, where execution had been stayed by *order* of that court. But the other members of the court, although hesitating at first, finally made an order, that the clerk should cast interest at the rate of fifteen *per cent.* on so much of the judgment below, as was for *money detained,* and at the rate of six *per cent.* upon the residue of the judgment. Accordingly a formal order *was made to that effect, which, for conformity,* I consented to sign, and which, I suppose, may be esteemed a decision of this court ; but, being made without argument, and without consultation, so far as I know, I cannot but regret, that it was ever made, and trust that it will not be followed as a precedent. It appears to me, that the statute *settles* this matter, by providing that " interest shall be added to the judgment of the county court " in *general terms ;* the law fixes the rate at six *per cent. ;* and the effect is the same, as if both statutes had formed but one, as they were both passed at the same session. The absurdity of a contrary decision is made sufficiently apparent by the necessity, which was felt in this case, of going back of the judgment in the county court and casting interest at *different rates* upon different portions of the entire judgment. I can only say, that I wholly *dissent* from this portion of the decision.