Adams *v.* Gay.

---

## JOHN ADAMS *v.* ALFRED GAY.

A contract entered into upon Sunday is not a violation or in any way in contravention of the statute of this state, if entered into in another state.

Such contract is not so far *contra bonos mores* at common law, as not to form the proper subject matter of an action in the courts of this state.

The statute laws of another state, when relied upon as a defence to a contract upon the ground of its illegality, must be proved, upon the trial, like any other facts in the case, and cannot be supplied in the supreme court, by producing there the statute book of that state.

All contracts of a secular character, and which are not properly works of necessity, or charity, if finally consummated upon Sunday, are void under the statute of this state ; so that, while matters remain in this condition, no action can be maintained, either upon the contract, or for any thing done under it, or growing out of it.

But contracts made upon Sunday should be held an exception, *in some sense,* from the general class of contracts which are void for illegality. They are not tainted with any general illegality, but are illegal only as to the time in which they are entered into. It is not sufficient to avoid them, that they have grown out of a transaction upon Sunday ; they must be finally closed upon that day. And although closed upon that day, yet if affirmed upon a subsequent day, they then become valid.

And in all cases of contracts entered into upon Sunday, *if* either party have done any thing in execution of the contract, it is competent for him, upon another day, to demand of the other party a return of the thing delivered, or, where that is impracticable, compensation ; and if the other party refuse, the original contract becomes thereby affirmed, and the same rights and liabilities are induced, as if the contract had been made upon the latter day.

This is an indispensable exception to the general rule in regard to illegal contracts, in order to secure parties from fraud and overreaching, which would, otherwise, be practised upon Sunday by those who know their contracts are void, and that they are not liable *civiliter* for even frauds practiced upon that day.

TROVER for a certain bay mare. Plea, the general issue, and trial by jury, May Term, 1844,—HEBARD, J., presiding.

On trial the plaintiff introduced evidence tending to prove, that

he exchanged horses with the defendant in July, 1842, the plaintiff delivering to the defendant the bay mare sued for, and the defendant delivering to the plaintiff a grey mare, which exchange was made on Sunday, a little after noon, at Surry in the State of New Hampshire; that the defendant, to induce the plaintiff to make the exchange, represented the grey mare to be "sound and right every way," and the plaintiff entered into the contract relying upon such representation; that afterwards, and during the same afternoon, the plaintiff discovered that the grey mare was unsound and badly diseased with the glanders; that the defendant, at the time of making such representation as to the soundness of the mare, knew it to be false; that during the same afternoon the plaintiff informed the defendant of the unsoundness of the grey mare, and requested him to re-exchange,—which the defendant declined doing; that upon another day, and within a reasonable time, the plaintiff tendered to the defendant the grey mare and demanded the bay mare; that the defendant refused to return the bay mare to the plaintiff, and thereupon the writ in this action was served upon him. The testimony also tended to prove that the grey mare was then abandoned by both parties, and that she died the ensuing winter.

The defendant requested the court to charge the jury, that if the exchange was made on Sunday, a little after noon, as the evidence tended to prove, the plaintiff was not entitled to recover.

But the court instructed the jury, that if they found, from the evidence, that the defendant made false representations in relation to the soundness of the grey mare, knowing them to be false, whereby the plaintiff was deceived and induced to make the exchange, and if the plaintiff tendered back the grey mare and demanded the bay mare, and the defendant refused to deliver the bay mare, the plaintiff was entitled to recover the value of the bay mare, notwithstanding the exchange was made upon Sunday, as the evidence tended to show.

Verdict for plaintiff. Exceptions by defendant.

*I. W. Richardson* and *Tracy & Converse* for defendant.

If the contract, upon which this action is founded, had been originally made in this state, no action could be maintained upon it. *Lyon* v. *Strong*, 6 Vt. 219. Nor could the plaintiff rescind the con-

tract and maintain trover for the horse, as the contract for exchange was executed. The parties are *in pari delicto*, and this court would not lend its aid to assist either party. *Dixon* v. *Olmstead*, 9 Vt. 310. *Danforth* v. *Evans*, 16 Vt. 538. Sw. Dig. 412. 2 B. & P. 467. *Walker* v. *Ferrin*, 4 Vt. 523.

The statute of New Hampshire can have no other reasonable construction, than the one which has been given to the statute of this state in the case of *Lyon* v. *Strong*. Rev. St. of N. H. 167, §1. *Roby* v. *West et al.*, 4 N. H. 285. Ib. 153. 7 Greenl. 461. But if it is considered, that the statute of New Hampshire does not render the act of the parties unlawful, yet we insist, that this court is not bound to enforce a contract in this state, which is contrary to the policy of the laws of this state, although it may be valid in New Hampshire. 2 Kent. 455–458. *Lodge* v. *Phelps*, 1 Johns. Cas. 139. Story's Conf. of Laws 203, 215. *Greenwood* v. *Curtis*, 6 Mass. 358.

*P. T. Washburn* for plaintiff.

Independent of the *day*, on which the parties exchanged horses, the facts found entitle the plaintiff to recover. *Kimball* v. *Cunningham*, 4 Mass. 502.

In examining the case in reference to the alleged *illegality* attached to the contract, we contend;

I.  That contracts made on Sunday are not void at common law; in other words, they are not *mala in se*, but *mala prohibita* merely. *Mackalley's Case*, 9 Co. 66. *Rex* v. *Brotherton*, 1 Str. 702. *Swann* v. *Broome*, 3 Burr. 1595. *Drury* v. *Defontaine*, 1 Taunt. 131. *Comyns* v. *Boyer*, Cro. Eliz. 485. *Smith* v. *Sparrow*, 4 Bing. 84, [13 E. C. L. 354.] *Rex* v. *Whitnash*, 7 B. & C. 596, [14 E. C. L. 100.] *Bloxsome* v. *Williams*, 3 B. & C. 232, [10 E. C. L. 60.] *Sayles* v. *Smith*, 12 Wend. 60. *Boynton* v. *Page*, 13 Wend. 429. *Story* v. *Elliott*, 8 Cow. 27. *Lovejoy* v. *Whipple*, 18 Vt. 379.

II.  We are proceeding, then, upon a *disaffirmance* of a contract rendered illegal by *statute*,—that is, *malum prohibitum*; and notwithstanding the great number of reported cases upon the subject of illegal contracts, we believe that they may be all reduced to a few simple classes, under one or the other of which every case, apparently conflicting with our right of recovery in this case, may be brought, without interfering with one right.

Adams v. Gay.

1. No action can be sustained *upon* an iilegal contract, nor to enforce its execution, whether such contract be *malum in se*, or *malum prohibitum*. Every case, which has arisen in the courts of this state, on which the defendant relies, has been decided under this rule. *Badger* v. *Williams*, 1 D. Ch. 137. *Mattocks* v. *Owen*, 5 Vt. 42. *Hinesburgh* v. *Sumner et al.*, 9 Vt. 23. *Dixon* v. *Olmstead*, 9 Vt. 310. *Foote et al.* v. *Emerson*, 10 Vt. 344. *Lyon* v. *Strong*, 6 Vt. 219. *Danforth* v. *Evans*, 16 Vt. 538. *Elkins* v. *Parkhurst*, 17 Vt. 105. And see *Roby* v. *West et al.*, 4 N. H. 285; *Frost* v. *Hull*, Ib. 153; *Law* v. *Hodson*, 11 East 300; *Foster* v. *Taylor*, 3 Nev. & M. 244; *Wheeler* v. *Russell*, 17 Mass. 258.

2. If the contract be *malum in se*, that is, 'void at common law, no action will be sustained, either on the contract itself, or, on a disaffirmance of the contract, to recover back any consideration, which may have been paid by either party, or on any collateral branch, growing out of such contract. *Thurston* v. *Percival*, 1 Pick. 415. *Wamell* v. *Reed et al.*, 5 T. R. 599. *Clugas* v. *Penaluna*, 4 T. R. 466. *Biggs et al.* v. *Lawrence*, 3 T. R. 454. *Vandyck* v. *Hewitt*, 1 East 96. *Langton* v. *Hughes*, 1 M. & S. 593.

3. The only cases of contracts *mala prohibita* merely, to which the same rule has been extended, are cases, where, upon reasons of *policy* and public *expedience*, the *contract itself* has been prohibited, and its inception at any time, or under any circumstances, declared illegal. Ld. Mansfield, in *Clarke* v. *Shee et al.*, Cowp. 197. Under this class come the cases brought to recover back money won at play. And see *Lowry et al.*, v. *Bourdieu*, Doug. 471.

4. But if the contract be *malum prohibitum* ⸳merely, the general rule is, that the *inequity* of the retention of the property or money advanced, by him who has received it, is considered greater than the statute *illegality* attached to the contract itself;⸳ and, upon a subsequent *affirmance* of the contract, or upon a *disaffirmance* of it, duly made and notified to the other party, the party making such advances may recover them back in any appropriate form of action. Ld. Mansfield, in *Holman* v. *Johnson*, Cowp. 343. Park, J., in *Williams* v. *Paul*, 6 Bing. 653, [19 E. C. L. 193.] *Pickard* v. *Bonner*, Peake's Cas. 221. *Lacaussade* v. *White*, 7 T. R. 535. Ld. Alvanley, Ch. J., and Heath, J., in *Tappenden et al.* v. *Randall*, 2 B. & P. 467. 2 Com. on Cont. 109. *Munt et al.* v. *Stokes*

46

Adams *v.* Gay.

*et al.,* 4 T. R. 561. *Ex parte Dyster,* 2 Rose's Bank Cas. 349. 2 M. & W. 159. *Johnson et al.* v. *Hudson,* 11 East 180. *Fitzroy* v. *Gwillam,* 1 T. R. 153. Cowp. 792. *Astley* v. *Reynolds,* Str. 915. *Smith* v. *Bromley,* Doug. 696, (n. 3.) *Jones* v. *Barkley,* Doug. 695, (n. 3.) *Stock* v. *Mawson,* 1 B. & P. 286. *Jackson* v. *Davison,* 4 B. & Ald. 691. *Rogers* v. *Kingston et al.,* 2 Bing. 441. *Jaques* v. *Golightly,* 2 Bl. R. 1073. *Jaques* v. *Withy et al.,* 1 H. Bl. 65. *Greenwood* v. *Curtis,* 6 Mass. 358. *Hunt* v. *Knickerbocker,* 5 Johns. 334. *Utica Ins. Co.* v. *Kipp,* 8 Cow. 20.

Of the class of cases which have arisen peculiarly from contracts made on *Sunday,* none can be found, which conflicts with our positions,—but rather the contrary. *Lyon* v. *Strong,* 6 Vt. 219, was an action in *affirmance* of the contract. So was *Fennel* v. *Ridler,* 5 B. & C. 406, and *Smith* v. *Sparrow,* 4 Bing. 84. Whenever the courts have been able, by giving to the statute the strictest construction it would bear, to uphold a contract made on Sunday, they have invariably done so. *Rex* v. *Whitnash,* 7 B. & C. 569, [14 E. C. L. 100.] *Drury* v. *Defontaine,* 1 Taunt. 131. *Bloxsome* v. *Williams,* 3 B. & C. 232, [10 E. C. L. 60.] *Sayles* v. *Smith,* 12 Wend. 60. *Boynton* v. *Page,* 13 Wend. 425. *Williams* v. *Paul,* 6 Bing. 653, [19 E. C. L. 193.] *Payne* v. *Eden,* 3 Caine 217. WILLIAMS, Ch. J., in *Lyon* v. *Strong,* 6 Vt. 219.

III. The parties in this case are not *in pari delicto.* The bill of exceptions shows, that the defendant was guilty of such fraud in the exchange, as would, of itself, justify the plaintiff in treating the contract as void. F. N. B. 95. *Harris* v. *Bowdin,* 1 Cro. Eliz. 90. 1 Com. Dig. 230. 2 Com. on Cont. 123.

IV. But this case must, so far as the validity of the contract is concerned, be decided wholly upon the law of New Hampshire. *Harrison* v. *Edwards,* 12 Vt. 648. *Greenwood* v. *Curtis,* 6 Mass. 358. *Houghton* v. *Page,* 2 N. H. 42. It is therefore incumbent on the defendant to show, in some proper manner, that there existed in New Hampshire, at the time this contract was made, a statute law, which would render it illegal. This court will not, *ex officio,* take notice of the statute laws of another state. *Pickering* v. *Fisk,* 6 Vt. 102. The existence of such a statute law is a *fact,* which must be pleaded, if necessary, and *proved,* like any other fact. *Pickering* v. *Fisk, ub. sup. Haven* v. *Foster,* 9 Pick. 112. *This* court can

Adams v. Gay.

only look at the bill of exceptions, for a statement of the evidence given by the defendant. *Adams* v. *Ellis*, 1 Aik. 24. *Richardson* v. *Denison*, 1 Aik. 210. *Eaton* v. *Houghton*, 1 Aik. 380. *Stearns* v. *Warner*, 2 Aik. 26. The bill of exceptions, in this case, shows no evidence of the existence of such statute law of New Hampshire, as having been given in the court below. And it is too late now for the defendant to supply such proof. *Blake et al.* v. *Tucker*, 12 Vt. 39. The court, therefore, will, and must, presume, that the decision of the court below was correct. *Mattocks* v. *Bellamy*, 8 Vt. 463. *Russell* v. *Fillmore*, 15 Vt. 130.

The opinion of the court was delivered by

REDFIELD, J.   The facts necessary to be recapitulated here, are, that the plaintiff and defendant exchanged horses, *in the State of New-Hampshire*, upon Sunday. In that exchange the defendant was guilty of fraud and misrepresentation, as the jury have found in the case. This became known to the plaintiff upon the same day, and he requested the defendant to re-exchange, which he declined doing. Some days subsequently, and not upon Sunday, the plaintiff made the same request of the defendant, tendering back to him, at the time, the horse which he had received of him; but the defendant refused either to take back his own horse, or to surrender the plaintiff's. Whereupon this action was brought for the deceit and false warranty, in which the plaintiff recovered a verdict, under instructions from the court, that under the foregoing state of facts the defendant was liable for whatever damage the plaintiff sustained by his fraud and misrepresentation, or by any breach of warranty on his part. The defendant tendered a bill of exceptions, in regard to this part of the charge of the court, which was allowed, and the case brought here for revision. It did not appear, that there was any evidence given upon the trial of any statute in the state of New-Hampshire prohibiting secular labor upon Sunday.

I. The question first made is, whether the law of New-Hampshire, which at the date of this contract prohibited all secular labor upon Sunday, except such as is of necessity or charity, can be regarded in determining the present action; and to us it seems very clear that it cannot. 1. It is obvious, that whenever the law of any other state is relied upon, as varying the rights of the parties in

any cause, the existence and provisions of that law must be shown in the course of the trial of the cause, the same as any other fact is proved. It may be true, and doubtless is, that courts do not ordinarily require proof of the existence, in foreign states, (where contracts may be made which are sued in our own courts,) of the very first principles of natural, moral, or commercial law. We should presume, perhaps, until the contrary were shown, that all civilized states regarded those fundamental laws of the social compact. And indeed, if it were shown, that a contract between our own citizens was made in a state where no law, by which the obligation of contracts could be enforced, existed, we should, I apprehend, uphold an action upon it, upon the ground that it was probably entered into with reference to some law, by which it might be enforced; else it would seem a very idle ceremony.

But beyond this, it is not easy to say that the courts of this country, or of England, have ever taken judicial notice of the laws of other countries. It has been often said by English judges, and often decided by the English courts, that they will not take judicial notice, that even the law of Scotland, or Ireland, is the same, upon any given subject, as the law of England. And it is the constant practice in all the courts in Westminster Hall, and in all the American States, to prove the unwritten laws of other states by witnesses, upon the stand, skilled in those laws. And I do not know, that it was ever held, in any country, that the courts could take judicial notice of the written laws of another state, and especially the criminal laws and internal police regulations of such state; such a law must always be proved by the production of the law itself, or of a properly authenticated copy.

2. It might be supposed, that the production of the statute of New-Hampshire in this court would be sufficient. But for many years this has been regarded as insufficient. This court sits merely as a court of error. We may, indeed, suspend the hearing, for the purpose of allowing an amendment in any part of the record of the court below, when any diminution is suggested. But no *fact* can be supplied in this court, even when proved by matter of record. *Blake* v. *Tucker*, 12 Vt. 39. Those cases, where the statutes of other states have been read in this court, to show the power of magistrates to take depositions there, have been, where this court takes

judicial notice of such powers; and consequently the statutes are read, like any other book of authority, to instruct the mind of the court. *Barron* v. *Pettes*, 18 Vt. 385.

II. The law of New-Hampshire, then, being out of the case, on account of its not having been proved at the trial, the contract between the parties is valid, unless it is void upon general principles of public policy, as being of evil example to our own citizens to see such a contract enforced in a court of justice. That the English and American courts have long refused to uphold certain contracts, on account of their general pravity, admits of no doubt whatever. Of this class are contracts to secure an immoral end, or such as are based upon an immoral consideration. Such are contracts to procure the seduction of an innocent female, or contracts for future cohabitation, or to encourage or support one in prostitution, or to procure any one to commit a crime, or fraud, or any immorality. But no case can be found, I apprehend, which goes the length of declaring all contracts, made upon Sunday, of this class. And as we are now called upon to determine how far a contract made upon Sunday is, on that account, immoral, and so void, it becomes necessary to examine carefully the ground upon which we go. 1st. It is certain, that such a contract is not a violation or in any way in contravention of the statute of this state, if entered into in another state. 2d. It should be determined, whether such contracts are considered immoral at common law. Here the authorities are full. All the English cases carefully distinguish between contracts, which are of the " ordinary calling " of the parties, and such as are not in the " ordinary calling." The former, if made upon Sunday, are void; the latter not. This distinction is based upon the words of the English statute of 29 Car. II, ch. 7, § 1, which prohibits only work of one's " ordinary calling." And contracts, not within this prohibition, have always been held valid there. *Drury* v. *Defontaine*, 1 Taunt. 131; *King* v. *Inh. of Witnash*, 7 B. & C. 794; *Fennell* v. *Ridler*, 5 B. & C. 406; *Rex* v. *Brotherton*, 1 Str. 702. And it is even now held in the English courts, that one, taking a contract upon Sunday, of one in his ordinary calling, may still maintain an action upon it, unless he at the time knew that it was of the " ordinary calling of the party." *Bloxsome* v. *Williams*, 3 B. & C. 232; 2 Stark. Ev. 245 in note, citing *Begbie*

v. *Levy*, 1 Cr. and & Jervis, Eng. Ex. R. 180. It is manifest, then, that, by the English courts, such contracts, when not within the prohibition of the statute, are not esteemed *contra bonos mores*, or in any other way invalid.

III. And I certainly feel some little reluctance in farther examining this case, upon this ground; knowing, as I do, that there exists great diversity of opinion upon this subject; and where the court are only to declare the law, it would seem sufficient, that no law exists, whereby such a contract has yet been held immoral. But opinions have somewhat altered, in regard to the strictness of the observance of the Lord's day, and possibly some might feel, that such a determination, as we here make, tends in some degree to relax that strictness. This we certainly have no desire to do. For whatever might be the feelings of any member of the court, in regard to the propriety of observing other days also, as religious fasts, or festivals, there could be but one opinion in regard to the strict observance of the Lord's day, among consistent christians.

But while sitting here to determine cases, we are to be mindful that our own feelings or private opinions upon religious matters, or those of others, have little to do with the results to which we should come. It is also to be remembered, that, in this State, full immunity for all religions, and no religion, is equally given by the fundamental law of the state. No man can be abridged of his perfect liberty in that respect. And while this does not forbid the legislature from passing general laws against blasphemy, the desecration of the Lord's day, and the disturbance of public worship, it does, impliedly at least, forbid the adoption of any law, which is not necessary for the quiet enjoyment of religious feeling and religious worship. So that all laws, which it is competent for the legislature to adopt, must have reference solely to preventing the disturbance of our citizens in their religious feelings or devotions. Beyond this, the constitution of the state absolutely prohibits any law. How, then, can it be said, that a contract made out of the state, upon Sunday, is any violation of the religious feelings or any infringement of the religious devotions of our citizens, any more than if made upon any other day?

There is only one other ground, upon which, it seems to me, it could be seriously contended, that such a contract is immoral;

that is, that its enforcement here tends to shock the moral sense of the community. I have no doubt such is the fact in regard to a portion of the most serious minded, earnest, and strenuously religious of our citizens. And no one can doubt, that the feeling of so considerable and influential a portion of the citizens of the state is entitled to the highest consideration. But in making inquiry into the state of the moral feeling of the whole community, we must not forget, that, upon religious matters, it is almost infinitesimally divided. And before we could determine that any given cause shocked the moral feeling of the community, we must be able to find but one pervading feeling upon that subject,—so much so, that a contrary feeling, in an individual, would denominate him either insane, or diseased in his moral perceptions. Now nothing is more absurd, to my mind, than to argue the existence of any such universal moral sentiment, in regard to the observance of Sunday. It is in no just sense a moral sentiment at all, which impels us to the observance of Sunday, for religious purposes, more than any other day. It is but education and habit in the main, certainly. Moral feeling might dictate the devotion of a portion of our time to religious rites and solemnities, but could never indicate any particular time above all others.

But this will be best determined by the actual state of opinions among us, upon this subject. Some of our citizens are atheists, perhaps; a considerable number deists, or rationalists; and among Christians there is an almost infinite diversity of opinion in regard to this subject. The Irish catholic, who may have become a denizen of the republic, regards St. Patrick's day, perhaps, as the most sacred in the calendar. The French catholic is willing to labor every day in the year, almost, except on St. Peter's day. If he is well informed, and conscientious, he will hardly forget Good Friday, or Christmas, or Ash-Wednesday. The same is true, in regard to these latter days, with the consistent members of the church of England, or of the Lutheran church, or of the Greek church, if any such there be among us. Now all these regard Sunday; but not as more sacred than some other days. It is but in commemoration of the weekly recurrence of the Lord's day, the Resurrection. But Easter-day, which is the *annual* festival of the Lord's day, is truly the great day of the feast,—the Sunday of Sundays, the crowning

festival of the year! And this, with Good-Friday, Ash-Wednesday, Christmas, and some few other prominent fasts and festivals, is most religiously observed in all the ancient churches; and in all the Lutheran churches,—which embrace Holland, Sweden and Denmark, Prussia and Germany, so far as they are protestant;—and in the English church and all its branches. And so are all the Sundays in the year, but with far less solemnity than the greater fasts and festivals above-named. In addition to this, it must be remembered that we have among us some Jews, perhaps, and some Seventh-day Baptists, who do not regard Sunday at all; and many of the Friends, who regard all days alike. This may all be very unwise or very unreasonable, in the estimation of some; but it is none the less true; and we must take things as they are. How, then, can it be said, that to enforce a contract made upon Sunday, out of the state, is shocking to the moral sense of the community? One might desire to have it so; and might possibly hope, or even believe, it will soon become so; but nothing, almost, would be more absurd, than to claim that it is so at the present time. As the case now stands, then, the plaintiff is clearly entitled to have judgment affirmed. But as the case has been fully argued upon the effect of the New Hampshire statute, and its existence was no doubt a conceded fact in the court below, and might now be stated in the bill of exceptions by the judge who tried the case, we should be sorry to determine the case against the defendant upon that ground. But as we would not delay the case to procure that amendment, unless, when procured, it would avail the defendant, we will proceed to examine that point.

IV. The New Hampshire statute is so much the same as our own, that we may consider the case, upon this point, the same as if the contract were made here. It has already been decided in this state, that a contract, *finally executed* upon Sunday, is void. *Lyon* v. *Strong*, 6 Vt. 219. But, when not fully closed upon that day, the contract is not void, because some of its terms might have been fixed upon that day, or, indeed, because most of the business, out of which the consideration for the contract arose, was transacted upon that day. *Lovejoy* v. *Whipple*, 18 Vt. 379. The contract is held to be void, upon the familiar principle, that all contracts made in contravention of an express statute—whether the sanctions of the statute are enforced by a penalty, or not—are void. The contract

Adams *v.* Gay.

being void, it will follow, of course, that, so long as the matter remains in that state, no action can be maintained, either upon the contract, or for anything done under it, or growing out of it. So that, in the present case, the plaintiff could not, in the first instance and upon general principles, have maintained any action for the recovery of his own horse, or to recover damages for the fraud or false warranty of the defendant. This certainly is the general rule, in regard to contracts which are void for illegality.

But to this general rule there are many exceptions; and these exceptions are framed 'mainly by judicial construction, and are founded upon some superior policy to that general policy which dictated the rule itself. And it seems to the court, that, in the class of contracts now under consideration, there *is* a most urgent necessity so to administer this rule in regard to them, that it shall not be in the power of the reckless and irreligious to circumvent and defraud the unwary, under the guise of the sacredness of the time when their own injustice was perpetrated. We have little doubt such practices have already been attempted in some cases, and that it might become a not unfrequent resort of those who desired to effectually cut off all remedy for their own fraud and dishonesty. If the general rule of holding contracts, made upon Sunday, void, is, also, to shield the contracting parties from the consequences of their frauds, and to allow the dishonest and abandoned to retain whatever they may be able to get possession of under such contracts, and at the same time release them from all liability upon their own contracts, then the rule itself will be productive of infinite mischief and should be discarded at once. But with such qualifications, as the English courts have already hinted at, we think the rule a safe one. We think contracts made upon Sunday should be held an exception, in some sense, from the general class of contracts, which are void for illegality. Such contracts are not tainted with any general illegality; they are illegal only as to the time in which they are entered into. When purged of this ingredient, they are like other contracts. Contracts of this kind are not void because they have grown out of a transaction upon Sunday. This is not sufficient to avoid them; they must be finally closed upon that day. And although closed upon that day, yet if affirmed upon a subsequent day, they then become valid. *Williams* v. *Paul,* 6 Bing.

47

653. The same principle is distinctly recognized also in *Bloxsome v. Williams*. And if it is competent to affirm a contract of this kind upon some other day, it follows, that there must be a very essential difference between such contracts and most other illegal contracts, which can never be so affirmed as to bind the parties. But we would choose not to leave it to the election of either party to disaffirm such a contract at will; for this, also, might lead to abuses. But in those cases, where the contract remains executory upon both sides, and was made upon Sunday, it is simply void, until subsequently affirmed by mutual consent. Where either party has done anything under such a contract, for which, of course, he would have no remedy under the contract, until it was subsequently affirmed, he may demand restitution of the thing, where that is practicable, —and where it is not, compensation; and thus he will put the other party to his election, whether to affirm or disaffirm the contract. If he decline to make restitution, or, when that is impracticable, compensation, this is, in fact, affirming the contract, and should be so held. In the present case, insisting upon retaining the fruits of the fraud, the defendant did in fact reaffirm the fraud itself, and must now be bound by its consequences, the same as if it was committed upon any other day.

This exception to the general rule of illegal contracts is reasonable and necessary, and goes upon the ground mainly of many others, which have been long recognized in courts of justice; that is, of relieving an oppressed party, and putting it in his power to visit the oppression upon the oppressor. It is upon this ground, that money paid for usury, for the insurance of lottery tickets, to procure the requisite number of creditors to sign the certificate of a bankrupt, and in some other cases, may be recovered back, nothwithstanding the party paying the money is implicated, in some sense, in the illegal transaction, but not in the same sense with the one who thus receives the money. The one commits a wrong voluntarily; the other, by a kind of duress of circumstances, is compelled to submit to become the instrument of wrong, and so is denominated the oppressed party.

So, too, in regard to the present subject, the parties, in consenting to enter into the contract upon Sunday, were equally guilty. The law, therefore, will give neither party any advantage from the

contract. But when one party has performed the contract on his part, and the other seeks, through his own violation of the statute and desecration of the Lord's day, to obtain a benefit without compensation, he becomes the oppressor, and the other the oppressed party; and it is upon this ground, in analogy to the principles above alluded to, that the court affords this relief, or redress. With this qualification the rule seems to us a salutary one, and without it to be almost insufferable.

We are fully sensible, that some portion of the reasoning, upon which we have made this case an exception to the general rule, if carried out to the fullest extent, would subvert the general rule, that neither party is entitled to redress in a court of justice for any injury sustained in consequence of entering into an illegal contract. But we do not consider this class of contracts as tainted with any such general corruption, as attaches to most cases of illegal contracts. If that were so, it would be impossible to defend many of the English decisions upon this subject, which we have here but followed out to their legitimate results. And in making this class of contracts an exception to the general rule, we are not sensible of departing more from the spirit of the rule, than has already been done, in allowing other exceptions, or than is necessary in allowing exceptions to most general rules.

As it is obvious, from the foregoing determinations, that the defendant is liable, in the present action, upon the facts found, the judgment below is affirmed.