## SMITH *v.* FOSTER.

Where propositions for a purchase and sale of property were made on Saturday, but the contract was completed by delivery on Sunday—*Held*, that the contract must be considered as made on Sunday.

Any contract made on Sunday must necessarily be to the disturbance of others, in the sense in which the word disturbance is used in the Revised Statutes (ch. 118, sec. 1), and is illegal if it relate to one's secular calling, and be not an act of necessity or mercy.

F. sold, transferred, and delivered a promissory note against W. to M., on Sunday, and received his pay for the same.   W. cannot be held as the trustee of F. for the money due on said note, after such transfer to M., even though the contract, as between the parties, was illegal, as being prohibited by law.

THIS action was brought by Eleazer Smith against A. K. Foster, principal defendant, and Edward Webster trustee.   The trustee disclosed that he was indebted to the defendant by a negotiable promissory note, made and payable in this State, dated June 26, 1858.   The writ was served upon the trustee June 28, 1858.   C. J. F. Stone appeared and claimed the note, and filed a plea, alleging that the note was transferred by the defendant to one Mulligan, in good faith and for an adequate consideration, before the service of the trustee process, and that afterwards said Mulligan transferred it to Stone.   Upon this plea issue was joined, and the plaintiff and Stone elected that it be tried by the court.   The court found that on the day on which the note was given the defendant asked one Adams if he knew of any body who would buy the note; that Adams said perhaps Mulligan would buy it, and that he would see Mulligan about it; and afterwards, on the same day, Adams saw Mulligan, and asked him if he would buy the note at the price which the defendant asked; that Mulligan said he would, and gave Adams the money for it, and Adams

said he would get the note for him; that on the next day, Sunday, June 27, Adams paid the money to the defendant, retaining a few dollars for his trouble in the matter; the defendant endorsed the note, and gave it to Adams, who on the same day delivered it to Mulligan, who, after the service of the trustee process, and after he had notice of said service, sold the note to Stone, informing Stone at the time of the sale, of said service, and of all the circumstances of the transfer of the note to Mulligan.

The court held the conclusions of law upon the foregoing facts to be, that the plaintiff was entitled to judgment against the claimant, and ordered judgment accordingly; and the claimant excepted; and the questions arising upon the case were reserved for the determination of the whole court.

*Burrows & Ela,* for the claimant.

I. The contract was complete on Saturday, as between the defendant and Mulligan. The simple delivery of the note to Mulligan on the next day (Sunday) does not make it void. *Allen* v. *Deming,* 14 N. H. 133.

II. There was nothing necessary to be done on the part of the seller of the note, or of the purchaser, to complete the contract. The property in the note passed to Mulligan when he paid the money to Adams, the agent of Foster, and the .contract was complete in itself. "Nothing remained to be done on the part of the seller to vest the property in the purchaser." *Allen* v. *Deming, ante.* It is held that a note payable to order may be assigned by delivery without endorsement. *Davis* v. *Lane,* 8 N. H. 224.

III. The court, as it seems to us, found certain facts not raised by the pleadings : to wit, that the note was delivered to Mulligan on Sunday, the next day after he had purchased it; but the case also finds, in substance, that the note was purchased and delivered before the service of the trustee process.

Smith v. Foster.

IV. The contract being complete on Saturday and the money paid, the delivery of the note on Sunday may be considered a mere ministerial act, which could be lawfully executed on that day. *Clough* v. *Shepard*, 31 N. H. 490, and cases there cited; see also *Clapp* v. *Smith*, 16 Pick. 247; *Geer* v. *Putnam*, 10 Mass. 312; *Kepner* v. *Keefer*, 6 Watts 231.

V. By the Revised Statutes (ch. 118, sec. 1) it is enacted, that "No person shall do any work, business, or labor of his secular calling, to the disturbance of others, works of necessity and mercy excepted, on the first day of the week," &c. The pleadings do not raise the question, nor does the case find that the delivery of the note and reception of it by Mulligan was "work, business, or labor of their secular calling," or that it was "to the disturbance of others," or that it was not "works of necessity and mercy." These facts should have been raised by the pleadings or stated in the case, to authorize the finding of the court. *Clough* v. *Shepard*, 31 N. H. 490; 1 Ch. Pl. 216.

*Smith*, for the plaintiff.

When, by either positive law or the principles of public policy, a contract or conveyance is void, it is deemed incapable of confirmation. *Allen* v. *Deming*, 14 N. H. 140. That which passed between the parties on Saturday night was not a contract; at most it was but a proposition to make a contract; and indeed the seller was ignorant of that proposition even, until Sunday morning. Yet, upon being informed of it, he made and completed the contract; it is therefore void. Ch. on Cont. 8; *Smith* v. *Bean*, 15 N. H. 578; *Stackpole* v. *Symonds*, 23 N. H. 229. In *Clough* v. *Shepard*, 31 N. H. 490, the defendant sought to take advantage of the prohibition of the statute by plea. The case at bar is different. Here the issue was joined upon the claimant's plea, and he, knowing of the attachment and sale, and transfer on Sunday, bought the note. Having proved

these facts, can he be deemed an innocent holder? Will not the court take notice of a public statute? 1 Ch. Pl. 215.

*Burrows & Ela,* in reply, cited *Smith* v. *Bean,* and claimed that even if the contract was made on Sunday, and so void as between the parties, yet that this plaintiff could not hold as against the claimant.

SARGENT, J. The decisions in *Frost* v. *Hall,* 4 N. H. 153; *Shaw* v. *Dodge,* 5 N. H. 462; *Clough* v. *Davis,* 9 N. H. 500; *Allen* v. *Deming,* 14 N. H. 133, were all made upon the statute of 1799, which was widely different in its provisions from our present statute. That statute prohibited any person from doing or exercising any labor or business or work of his secular calling, upon the Lord's day, under a penalty. N. H. Laws of 1830, 167. This was a prohibition of the act, without any qualification. Whether the business were exercised alone, or in the midst of a city; whether it were carried on by the offender without any assistance, or conjointly with others; whether there were witnesses to the act, or he were tried and convicted upon his own confession alone—the transaction was equally within the prohibition of the statute. Nor did it, under that statute, make any difference whether the calling was such as to attract the public attention, and accompanied by noise and clamor, so as to be to the evident disturbance of a whole neighborhood, or whether the calling was a noiseless and quiet pursuit, carried on in a person's own house and by himself alone, not only without disturbing any body, but without the notice or knowledge of any one, if it was work or business of his secular calling, it was alike prohibited in the latter case as in the former. But our present statute provides that the work, labor, or business of the person's secular calling shall not be done to the disturbance of others upon the Lord's day. Rev. Stat., ch. 118, sec. 1;

Comp. Laws 271.    Under this statute we have two deci-sions reported which seem to bear upon the case before us; *Varney* v. *French*, 19 N. H. 233, and *Clough* v. *Shepard*, 31 N. H. 490.   In the latter of these cases it is held that by our present statute no acts are prohibited to be done on Sunday but such as are done to the disturbance of others, and that a plea that an original writ was issued on Sunday is defective if it does not allege it to have been done to the disturbance of others; and in delivering the opinion in that case, *Bell*, J., in assigning a reason why the plea in abatement should state these particulars, says, "The party who would take advantage by plea of the prohibition of the statute, is bound to allege all the facts which are neces-sary to show the act objected to to be a violation of law, unless those facts are such as the courts are bound to take notice of officially.   He must not only allege the act to have been done on the Lord's day, but he must allege it to be work, labor, or business of the secular calling of the person doing it; that it was done to the disturbance of others, and that it was not a work of necessity or mercy; for, unless all these facts appear, the act is not within the terms of the statute, and is not prohibited by it.   The court cannot judicially know or notice either of these things unless they are alleged."

But here the matter is not pleaded in abatement to the declaration, but is relied upon as a defence against this claimant; as an answer to his claim.   And if the facts in-troduced constituted a defence to the claim of Mulligan, there could be no objection to their introduction upon this issue, as the pleadings stand; but whether these facts when introduced constituted a defence or not, remains to be con-sidered.

We are therefore led to inquire whether the facts found by the court below were such that it followed, as a con-clusion of law from such facts, that the note was not thus legally transferred, and of course that the claimant cannot hold it.

In *Allen* v. *Deming, ante,* it was held that the execution and delivery of a promissory note on Monday was business of a person's secular calling, and of course prohibited by the law then in force, and alike prohibited by the present law, if done to the disturbance of others. Now the buying and receiving, and selling, endorsing, and delivering of a promissory note, must be business, as much as the executing and delivering of one and the receiving it would be; and it is also business of one's "secular calling" as much as the other.

It is not business of one's ordinary calling or common occupation that is prohibited by our statute, as was the case by the English Sunday Act, 29 Charles II., ch. 7, sec. 1; but of his secular calling. This distinction between "ordinary calling" and "secular calling" will readily be perceived. It is not claimed that the act we are now considering was an act of necessity or mercy; and the next question is, was this business done to the disturbance of others. That will of course depend somewhat upon the construction that is here to be given to the word disturbance. If that is to be understood in the sense that a person cannot be disturbed by business unless it annoys him, or interferes in some way with his devotions, or his meditations, or his rest, against his wish; if, to be disturbed, he must feel himself discommoded, troubled, or in any way annoyed by the transaction of the business, then there is no evidence in this case sufficient to warrant any such conclusion of law; because, from any thing that appears in the evidence, all parties to the transaction, who had any thing to do with this business upon Sunday, seem to have been equally pleased by the transaction, and all equally interested in its accomplishment, and all equally ready, willing, and anxious to do their part of it, and to have each and all the rest do theirs.

But we find, in *Varney* v. *French,* before cited, a construction given to this word. *Gilchrist,* C. J., in deliver-

Smith *v.* Foster.

ing the opinion of the court, says, " If nothing can be considered a disturbance which people willingly submit to and take a part in, then the legislature did not intend to prohibit any assembly of persons, for whatever purpose, provided the people present are willing to give up their religious duties and take part in whatever is done." " Upon this principle a horse-race in a public street would be no disturbance, if the people chose to desert the churches and assemble on the race-ground.   A military parade on the Sabbath would not be prohibited, if the bystanders, or those who heard it, preferred military to sacred music.  A theatre or a circus, a menagerie or a political caucus, would no more be disturbances than would the services in the church.  But we do not think that such would be the true construction of the act."   And he concludes that the only safe meaning that can be given to the word disturbance in this connection, is a comprehensive one, going upon the ground that the main purpose of this statute, as thus changed from the old one, was to relieve an individual from the penalty, who had been guilty of no act that actually did or that tended to disturb and distract the minds of others from those religious observances which the law unquestionably intended to respect; that such being the object of the statute, nothing should be tolerated that tends to defeat it.   He then supposes the case of a person wishing to purchase a horse.   He would have no right to go to the owner to procure terms, or conditions, or propositions of sale on the Sabbath, because that would tend to disturb the quiet of the owner upon the day which the statute intended should be respected ; and even if the owner be willing to be thus disturbed, that willingness will not make the contract valid, for the disturbance is prohibited by statute.  We understand from this decision that a valid contract cannot be made on Sunday, if it relates to the business of one's secular calling and is not an act of necessity or mercy, because two or more must necessarily be

engaged in making such contract; and however willing and desirous they both and all might be to consummate it on that day, yet in doing it they would each necessarily disturb the other or others, in the sense in which that term has been held to be used in our statute. In this view of the subject, and of the disturbance which the statute contemplates, there would seem to be sufficient evidence in this case, provided the contract was made on Sunday; so that the conclusion of law must be that it was to the disturbance of others.

But the claimant says that the contract in this case was not made on Sunday, but on Saturday, and is therefore free from any objection. Let us examine that position. There is hardly enough appearing in the case to show that Adams was the agent of one party more than the other in the transaction. Up to the time of paying over the money and taking the note there is nothing to show that he was any thing else than the mutual friend of both, carrying messages and propositions from one to the other; and for aught that appears, up to the time that he reserves his pay out of the money, before paying it over to the defendant, he might as well have charged Mulligan for services as Foster. But he evidently understood that there was some necessity on the part of Foster, either to get the money on the note for some special purpose, or for some other special purpose to get rid of the note as soon as possible; and he evidently understood that this necessity of Foster's, whatever it might have been, would enable him easily to secure an advantage to himself, which he did not fail to do, as it seems; for it would seem, from the case, pretty apparent that a good bargain was driven, both for Mulligan and himself, by Adams, at Foster's expense. And whatever negotiations there may have been on Saturday, we think the trade must be held to have been concluded on Sunday. Nothing was done that would constitute a contract before Sunday. All that had passed before were but mere propo-

sitions and negotiations, made, through their mutual friend, to and with each other; but upon this day the money was paid over to the defendant, and he indorsed the note and gave it to Adams, and he on the same day delivered it to Mulligan. This was the closing of the contract, in fact the contract itself, without which there was no contract.

But supposing that Adams was the agent of the defendant, and as such made the contract with Mulligan; can it be said that the contract was perfected and complete without any delivery of the note? or was not that very act of delivery the final consummation and perfecting of the contract; the act that confirmed and perfected into a contract all the former talk, negotiations, and offers; an act without which all that passed before would have been but mere talk and propositions, without any effect or binding force whatever? The final delivery of the note was the most important act and part of the contract, which gave force and effect to all the rest, and without which all that passed before would have gone for nought. The note was delivered, and received and accepted on Sunday, and the act of delivering and receiving and accepting the note on Sunday, in accordance with propositions previously made, was as much business of one's secular calling as the giving and receiving of a promissory note between the same parties would have been; and it was to the disturbance of others, that is, of each other, within the meaning of the statute, as we have before seen. In *Williams* v. *Paul*, 6 Bing. 655, it was held that the contract for the purchase and sale of certain heifers, although the bargain was made and the price agreed upon, with the terms of payment, on Saturday, subject to the defendant's approval of the beasts upon inspection the next morning, was made on Sunday, because the bargain on Saturday was incomplete, and came to no conclusion till the defendant had inspected and approved the cattle on Sunday. See also *Adams* v. *Gay*, 19 Vt. 358. In *Smith* v. *Bean*, 15 N. H. 577, *Parker*, C. J., says, "The

contract of sale by Boice to the plaintiff was made on the Sabbath. The plaintiff took possession of the oxen on Monday. If Boice had delivered them on that day, the completion of the sale by the delivery being lawful, it would not have formed a legal objection to the sale that the negotiations respecting it, ending in an agreement to make it, took place at a time when secular labor was forbidden and unlawful. The contract would have been executory until perfected by delivery, and the perfected contract of sale would have been lawful and binding." But in that case there was no delivery of the oxen on Monday by Boice, but the plaintiff took possession of them upon that day, under the direction and permission of Boice given on Sunday; so that all that was done, or all that was to be done by Boice, was done on Sunday; and the contract was therefore held to be illegal, and, as between the parties, void, so that neither party could have maintained any action upon it. So in the case at bar, the contract was merely executory until the delivery of the note, even supposing Adams to have been acting for the defendant. No contract was concluded till then, but then and by that act of delivery it became an executed, a completed contract.

So in *Stackpole* v. *Symonds*, 23 N. H. 229, it was held that where propositions were made for a trade on Sunday, and the contract afterwards completed, the same was valid, because what passed upon Sunday was only a proposition and not a contract; and now if we should hold in this case, where the proposition was made on Saturday and the contract completed and executed by delivery on Sunday, that the contract was valid, we should be cutting off the law at both ends, so that really there would be nothing left of it.

The cases cited by the defendant, *Geer* v. *Putnam*, 10 Mass. 312, and *Clapp* v. *Smith*, 16 Pick. 247, are not now considered as law in Massachusetts, as will be seen by reference to *Pattee* v. *Greeley*, 13 Met. 284; *Gregg* v. *Wyman*,

4 Cush. 322; *Merriam* v. *Stearns*, 10 Cush. 257; and *Bustin* v. *Rogers*, 11 Cush. 346. So the case *Boynton* v. *Paige*, 13 Wend. 425, cited by the defendant. There the contract made on Sunday was holden to be valid, because private contracts made on Sunday were not prohibited at that time by the statute of New-York, but only "the publicly exposing to sale on that day of any goods, chattels," &c. In fact, we find the authorities uniform upon that subject in England, and in this country recently, that notes given or contracts made on Sunday, contrary to the provisions of the statute, are void as between the parties. *Fennell* v. *Ridler*, 5 B. & C. 406; *Bensley* v. *Ringold*, 5 B. & Ald. 335; *Smith* v. *Sparrow*, 4 Bing. 84; *Williams* v. *Paul*, 6 Bing., *ante*; *Lyon* v. *Strong*, 6 Vt. 219; *Lovejoy* v. *Whipple*, 18 Vt. 379; *Adams* v. *Gay*, 19 Vt. 358; *Goss* v. *Whitney*, 27 Vt. 272; *Northup* v. *Foot*, 14 Wend. 248; *Smith* v. *Wilcox*, 19 Barb. 341; *Fox* v. *Abel*, 2 Conn. 541; *Phalen* v. *Clark*, 19 Conn. 421; *Frost* v. *Hill*, 4 N. H. 153; *Shaw* v. *Dodge*, 5 N. H. 462; *Clough* v. *Davis*, 9 N. H. 500; *Allen* v. *Deming*, 14 N. H. 133; *Lewis* v. *Welch*, 14 N. H. 294; *Smith* v. *Bean*, 15 N. H. 577; *Woodman* v. *Hubbard*, 25 N. H. 67.

So, then, upon the facts stated in the case, we find the conclusion of law to be that the contract here between Foster, the defendant, and Mulligan, as between themselves, was void; that is, that neither of them could maintain any action upon it against the other. But we understand this is as far as the presumption of law upon the facts stated will carry us; but this does not seem to be far enough to sustain the finding of the court below, that this plaintiff can hold the money in the hands of the trustee which is due upon this note. Admit that the contract is void as between the parties, and admit, what the case finds, that Stone bought the note of Mulligan, knowing all the circumstances of his purchase, so that he can stand in no better position here than Mulligan could, and it follows, that if Mulligan had bought the note on

Sunday, and agreed to pay a certain sum for it, Foster could not have maintained any suit on that contract for the money; and, on the other hand, neither Mulligan nor Stone could maintain any action against Foster upon his indorsement, because that was made on Sunday as a part of the contract, nor upon any other guaranty of or concerning the note, if made as a part of the same contract. But it is expressly held, in *Smith* v. *Bean*, 15 N. H. 577, and in *Clark* v. *Gibson*, 12 N. H. 386, that creditors cannot take advantage of an illegal sale or contract of this kind, to hold the property of their debtor, in any other or different manner than he himself could hold it. When a sale is made to defraud, hinder or delay creditors, and the party purchasing knew of such intention on the part of the vendor, a creditor may attach and hold the property as the property of the vendor, even though the property has passed into the possession of the vendee, and even though he may have paid a sufficient consideration for it. In that case the creditor can hold the property when his debtor could not do so. But where the sale is not fraudulent as to creditors, but merely illegal as between the parties, a creditor cannot stand in any different position from that in which the. debtor himself stood at the time of the commencement of the suit, or the service of the trustee process. Let us, then, inquire to whom Webster, the trustee, owed the money on this note, on Monday after the transfer of the note, and before the service of the trustee process upon him. He of course owed the money to somebody, because the contract between Foster and Mulligan, however illegal, did not pay the note, or discharge Webster's liability to pay it to somebody. The only question, then, is whether at that time, after the transfer and before Webster was trusteed, Mulligan or Foster could hold and collect the note; and there can be no doubt, upon the authority of the two cases last cited, that Mulligan could do so. Here the note passed into the

Smith *v.* Foster.

hands of Mulligan, and Foster got his money for it, and in such cases where the property passes, though under an illegal contract, neither party can recover it back, according to the maxim, *In pari delicto, potior est conditio possidentis.* Broom's Legal Maxims 325. And as Foster had sold the note, and got his pay for it, the possession of it having passed, the property became vested, and to allow either of the parties under those circumstances to rescind the contract, though illegal, without repaying what he had received, would be allowing him to take advantage of his own wrong; much more where the parties to the illegal contract are both willing and desirous of abiding by it, are both content with it, and are confirming and ratifying it by their acts, as far as it is possible that such an illegal contract can be confirmed. Mulligan's possession of the note on Monday was enough *primâ facie* to entitle him to recover upon it as against Webster; and no one in all the world had any better right to it than Mulligan, unless it was Foster, and we have seen that he is in a position where he could not, if he would, and would not, if he could, object to Mulligan's right to it, or interfere with him in its collection, or in any disposition he might choose to make of it. So, then, Foster had no interest in the note at the time of the service of the trustee process upon Webster. He could not claim the note of Mulligan, or collect it of Webster, and if he could, had no desire to do so. Neither can Foster's creditors stand in any better situation than he. They cannot take advantage of an illegality of this kind in his contract, where he could not, or even where he has not done it, even though it may have been in his power to have done so. *Clark* v. *Gibson,* 12 N. H. 386, *ante.* The finding of the court below must be set aside, and the parties have a new trial. The only question that would seem to be open, however, if the other facts should all appear as they did before, would be whether the transfer of the note was not

fraudulent and void as against Foster's creditors, from having been made with an intent on Foster's part, known to Mulligan and communicated to ᵢStone, to defraud, hinder or delay such creditors.

*A new trial granted.*