JEREMIAH FLINN v. SAMUEL M. ST. JOHN.*

*Officer.    Authorized Person.    Contract Made on Sunday.    Subsequent Ratification.    Negligence.*

An authorized person who takes and assumes to serve the writ for the service of which he is authorized, is *pro hac vice* an officer of the law, and the duty he is under is not one arising out of contract between himself and the plaintiff.  Thus, although he be not bound to receive and serve the writ, yet if he undertake it, it is his duty, although not specially so instructed, to attach property, if openly visible; and for the neglect of that duty, case and not assumpsit is the appropriate action.

A contract invalid by reason of having been made on Sunday may be ratified by the parties on a week day by any act that recognizes its existence.  Thus :  Defendant made default in the service of a writ, which, as an authorized person,· he took and assumed to serve.  On Sunday he agreed with plaintiff that if plaintiff would discontinue that suit and bring another, summoning a certain person as trustee, it should not discharge him from any liability he was under by reason of his default. After sunset of that day the parties arranged to discontinue that suit, had a new writ made, and immediately after 12 o'clock of that night, gave notice of discontinuance and served the new writ, defendant assisting the officer who made the service, because he was interested to secure immunity from the consequences of his default.  *Held*, that the contract was ratified.

* Decided at the January Term, 1878.

Flinn *v.* St. John.

In case for that default it appeared that the second suit was entered in court at the March Term, 1860. At the same term one of the trustees appeared and disclosed that he had funds in his hands that he owed to W., one of the principal defendants, unless he was liable to pay the same to H., who had before then brought suit therefor. H. was ordered to be cited as claimant, and a commissioner was appointed. At the next term the other trustee was discharged. The principal defendants never appeared, and in November, 1868, defendant W. died. The claimant's suit was pending until after that time. At the April Term, 1869, the death of W. was suggested. Nothing further was ever done in the cause, and at the April Term, 1874, it was discontinued. Defendant requested the court to charge that under the contract it was plaintiff's duty to prosecute the second suit with ordinary and reasonable diligence. The court in effect so charged, but also charged that it was optional with plaintiff to have the principal defendants defaulted for non-appearance. *Held,* that plaintiff was bound to use all reasonable diligence to make that suit available, and that the court in so charging should have called attention to the fact that he had allowed the cause so to lie, without taking judgment against the principal defendants, until by the death of W. he was precluded from trying the question of the liability of the trustee, and that the charge was misleading and erroneous.

CASE brought March 16, 1875, against an indifferent person for neglecting to serve a writ. Pleas, general issue, and Statute of Limitations. Trial by jury, April Term, 1877, PIERPOINT, C. J., presiding.

It appeared that on February 7, 1860, the plaintiff, then a creditor of Ashley & Warner to the amount of about $330, took out a writ of attachment against them and one Witters as trustee, directed to the defendant as an indifferent person, and on the same day delivered it to the defendant for service. And the testimony on the part of the plaintiff tended to show that at the time he delivered the writ to the defendant, he expressly directed the defendant to " secure the debt," and that the debtors at that time had sufficient visible attachable personal property for that purpose. But the defendant's testimony tended to show that when the writ was offered to him the plaintiff informed him that Ashley & Warner were about to fail; that he said to the plaintiff that if he desired an attachment of their property he must himself go and assist in making service of the writ; that the plaintiff replied that he desired to have service made on the trustee only, and that the defendant need not attach property on the writ if Ashley would promise that the debt should be paid within a few days; that he made due and seasonable service of the writ on the trustee, and

on Warner by copy only.; and that in all other respects he obeyed the plaintiff's directions in respect to said service.

The plaintiff's testimony tended further to show that on February 11th all the visible attachable personal property of Ashley & Warner was levied on by other creditors, and afterwards sold; and that the plaintiff never afterwards had an opportunity to collect his debt of them.

On Sunday, February 19th, the plaintiff and the defendant met at the office of the plaintiff's attorney in that suit, and there, in the afternoon of that day, and before sunset, the defendant, at the suggestion of said attorney, executed a writing whereby he agreed that if the plaintiff would discontinue his suit and begin another, summoning Charles I. Ladd as trustee, it should not discharge the defendant from any liability he was under by reason of the alleged neglect, but that he would remain liable in the same manner and to the same extent as though the first suit had proceeded to judgment and execution. In pursuance of that arrangement the plaintiff then and there sued out a writ against Ashley & Warner, directed to one Sanderson, an indifferent person, and returnable to the March Term, 1860, of the Chittenden County Court, summoning Ladd, who was then and ever after of unquestioned solvency, and also Witters, as trustees. The writ was delivered to Sanderson for service on the same afternoon, and he made regular service thereof on the trustee and on Ashley & Warner soon after 12 o'clock that night, Ashley & Warner having been duly notified of the discontinuance of the first suit before the service of the second writ was commenced.

The defendant's evidence tended to show that when the writ was delivered to Sanderson it was arranged, at the suggestion of the plaintiff or his attorney, that the defendant, who had had some experience in the transaction of such business, should go with Sanderson, who was inexperienced, when he went to serve said writ, for the purpose of instructing him therein and giving notice of the discontinuance of the first suit, which he accordingly did. The plaintiff's evidence tended to show that whatever the defendant did in giving the notice and serving the writ, he did on his own motion, and to protect his own interest. The writ in the sec-

ond suit, with the return thereon in due form, was entered in court at the term to which it was returnable ; and at that term Ladd appeared and filed his disclosure, wherein he disclosed that he had been engaged as a partner in trade with Warner ; that in closing up the business of the firm he had received and then held $451.04 more than his share of the proceeds, which he then owed to Warner, unless he was liable to pay it to one Cyrus Hotchkiss, of whom Warner had bought goods that he put into said concern as part of its capital stock when the copartnership was formed, but to whom the trustee contended he was not liable. A commissioner was appointed, and Hotchkiss was cited in as claimant.

The principal debtors never entered any appearance in the cause, nor was any further action ever had or taken therein concerning the trustee except that at the September Term, 1861, after hearing before the commissioner, the trustee Witters was discharged, but the cause was continued from term to term until the September Term, 1874, when it was discontinued, the defendant Warner having died in November, 1868, and his death having been suggested at the April Term, 1869. Relative to the delay in the prosecution of that suit the plaintiff testified : " I cannot say why I did not take judgment against Ashley & Warner at the March Term, 1860. I understood that the reason I did not hold Ladd as trustee was, that my attorney had neglected to take judgment against Warner in his lifetime. C. Hotchkiss claimed this money, and had a suit pending in the County Court for it until after Warner's death."

The defendant requested the court to charge as follows :

1. For a mere *omission* to make service of process, an authorized person is liable only to an action *ex contractu*. The action in the present case being in tort, cannot, even upon the plaintiff's showing, be sustained.

2. No action whatever can be sustained against an-authorized person for neglecting to attach property, without proof of what in law constitutes a *contract* on his part. The mere delivery to him of process, without distinct instructions to attach, imposes no legal obligation on him to do so. There is no evidence in the case tending to show a binding obligation on the part of the defendant to attach property.

43

3. The contract of February 19, 1860, was unsusceptible of ratification, so as to be operative to prevent the running of the Statute of Limitations; but if that contract was susceptible of ratification, there is no evidence in the case tending to show a ratification.

4. Under that contract it was the duty of the plaintiff to prosecute the second suit with at least ordinary and reasonable diligence; and as it appears without dispute, that it was not prosecuted, and that if it had been, instead of being allowed to slumber on the docket for fourteen years, and until after the death of Warner, the trustee, Ladd, would have been adjudged chargeable for more than sufficient to satisfy the plaintiff's claim—the breach of contract on the part of the plaintiff is fully established.

5. There is no evidence in the case on which the jury will be legally warranted in finding that the plaintiff could not have secured his claim by attachment of Ashley & Warner's property.

6. Upon the whole evidence in the case, the jury should be directed to return a verdict for the defendant.

The court omitted so to charge, but charged that while the defendant was under no legal obligation to undertake the service of the writ, yet if he took the writ from the plaintiff, with directions to secure the debt, and attempted to serve it, it was his duty, without being specifically instructed to do so, to attach property, if openly visible, and that if he neglected to do so, he was liable for the damage; that the writing of February 19, 1860, had the effect of an acknowledgment on the defendant's part, of his liability to pay the damage that the plaintiff had sustained by reason of his neglect to attach property, provided he was responsible for it under the rules laid down by the court, — the effect, if valid, to suspend the operation of the Statute of Limitations until the experiment of the second suit could be tried, with proper diligence; that if it was executed on Sunday, it was not binding originally, and could have no effect to bar the statute, unless it was afterwards ratified; that if after sundown of that day the parties talked the matter over and arranged that the first suit should be discontinued, and a new one brought, and proceeded to make out another writ, and after 12 o'clock proceeded to give notice of the discontinuance of the first suit, and to make service of the second writ, that was a ratification of the contract, and

made it binding; that if the defendant, having a contingent interest in the success of the second suit, went with Sanderson to advise and assist him in the performance of his duties, to see that the service was proper, and that the notice of discontinuance was given, for the purpose of protecting himself, it was an affirmance of the contract, and he was estopped from denying its validity, but that if he acted as the agent of the plaintiff it would not have that effect.

The court charged further as follows:

It was the duty of the plaintiff to prosecute that suit with all reasonable dispatch, and in the manner in which suits are ordinarily conducted; and if he failed to do so, he could, at the most, recover only nominal damages, but that being a trustee suit, it was optional with the plaintiff to have, or not to have, the principal debtors defaulted for their non-appearance. We do not know whether or not the plaintiff's claim against Ashley & Warner was secured by the summoning of Ladd as trustee. If the plaintiff discharged his duty in the prosecution of the second suit, the defendant's original liability, if any, would continue through the whole of that proceeding, until the death of Warner was suggested upon the docket. If the plaintiff was guilty of negligence in the prosecution of that suit, he would still be entitled to recover nominal damages, provided the defendant was originally liable.

To the refusal of the court to charge as requested, and to the charge given, the defendant excepted.

Verdict for the plaintiff. The defendant moved in arrest, and the court overruled the motion, *pro forma;* to which the defendant excepted.

*E. R. Hard* and *C. W. Witters*, for the defendant.

The mere authorization of a private person to make service of process imposes no legal obligation on him to make the service. He may decline to act, or, as between himself and the plaintiff, may accept the appointment and undertake its duties on such conditions and limitations as he may choose to impose. When he undertakes, whether with or without instructions, to perform the duties of his appointment, his obligations grow out of his contract, express or implied, with his employer; and for a mere neglect to

perform any of those duties, the only remedy is by action *ex contractu.*

The plaintiff's claim was barred by the Statute of Limitations. This must be admitted, unless the bar is avoided by the contract of February 19, 1860. That contract having been made on Sunday was void, and could not afterwards be ratified so as to become operative for this or for any other purpose. Gen. Sts. c. 93, s. 1; 1 Story Cont. s. 756; *Cranson* v. *Goss*, 107 Mass. 439; *Day* v. *McAllister*, 15 Gray, 433; *Allen* v. *Deming*, 14 N. H. 133; *Boutelle* v. *Melendy*, 10 N. H. 196; *Finn* v. *Donahue*, 35 Conn. 216; *Pope* v. *Linn*, 15 Me. 83. And even if the contract had been susceptible of an effectual ratification, there was no evidence of such on the part of the defendant. No act of his, done subsequently to the execution of the contract, was done in the performance of any of its requirements, and he would have had the same motive for doing what he did, if the contract had not been made. If, as respects the Statute of Limitations, that contract had any effect, it could only be to postpone the plaintiff's pretended right of action for such reasonable time as, with the exercise of ordinary skill and diligence on the part of the plaintiff, might be required to prosecute the second suit to a final determination. It certainly did not, at the mere option of the plaintiff, work a perpetual, or even a fifteen-year, stay of the statute bar. The statute commenced running as early, at the latest, as 1862 or 1863. But if it could be properly insisted that, irrespective of the want of diligence, the statute would not commence to run so long as the suit continued to be pending, Warner's death in November, 1868, *ipso facto* abated the suit as to him, and rendered the collection of the plaintiff's debt impossible in that suit; and more than six years having intervened between his death and the commencement of this suit, the plaintiff's claim against the defendant is barred, and it was error for the court to tell the jury that "the defendant's original liability, if any, continued through the whole proceedings, until the death of Warner was *suggested upon the docket.*"

The contract of February 19, 1860, imposed on the plaintiff an obligation to prosecute the second suit with reasonable skill and

diligence; and if by the exercise of such skill and diligence he would have collected his debt, and he neglected such exercise, and thereby the suit became unavailing, the defendant's liability for neglect to make proper service of the first writ was discharged. But as the case shows that Ladd was a person of means, and that there was more than sufficient funds in his hands belonging to Warner to fully pay the plaintiff's claim and all costs, and as no valid excuse for the delay in the prosecution of the second suit was shown, but the contrary, the court, as matter of law, should have instructed the jury in accordance with the defendant's fourth and sixth requests; and it was error to charge that " we do not know whether or not the plaintiff's claim against Ashley & Warner was secured by the summoning of Ladd as trustee."

. The charge that even though the plaintiff was guilty of negligence in the prosecution of the second suit, he would still be entitled to recover nominal damages, provided the defendant was originally liable, was erroneous. The contract of February 19, if it had been binding, would have cut off all claim in favor of the plaintiff against the defendant for his alleged negligence, unless, without negligence on the part of the plaintiff, the second suit against Ashley & Warner should prove unavailing. How then can the plaintiff recover of this defendant even nominal damages, when the fruitlessness of that suit was the result solely of the plaintiff's gross negligence ?

Judgment should have been arrested.

*Daniel Roberts* and *George A. Ballard*, for the plaintiff.

The action is based on the claim, that the defendant assumed to exercise an employment, confided to him by the plaintiff in trust and confidence, and that by his gross and wilful neglect in the manner of exercising such employment, the plaintiff has suffered damage. This gives an action, though there existed no. consideration. 1 Parsons Cont. 447 ; *Hyde* v. *Moffatt*, 16 Vt. 271. But there was a consideration in the fees for the service of the writ. Case is, nevertheless, the appropriate form of action, since the legal obligation grows out of the facts stated, without any express promise. *Hyde* v. *Moffatt, supra; * 1 Chit. Pl. 135 ; *Dean* v. *McLean,* 48 Vt. 412.

There is nothing in the agreement of February 19 that goes in release of the defendant's original liability. The plaintiff did not thereby *contract* to do or not to do anything which would affect that original liability; and that liability existed whether the first suit should be discontinued or not. So as to the second suit, if the plaintiff, after service, had voluntarily discontinued it, he would have broken no contract with the defendant, and the original liability of the defendant would have remained. As the court said, the effect of the agreement was, " to suspend the operation of the Statute of Limitations until the experiment of the second suit could be tried," and this was the only effect.

The question then is, when did the statute begin to run after such suspension? Not earlier than the effective ending of the second suit. Warner's death did not end it, for, until suggested on the record, it could not be judicially known that he was dead; nor could it even then be known that an administrator might not enter to defend. If the statute commenced to run at an earlier date, determinable by the plaintiff's negligence, what date will the defendant fix upon?

The court erred in ruling that the plaintiff's right of recovery depended on his diligence. The plaintiff contracted for nothing, in that respect. The arrangement was for the ease and favor of the defendant. He had such an interest in the prosecution of the second suit, as gave him the right to direct in its prosecution, to the extent of relieving himself. If it was not progressing to his liking, he had only to express his dissent, and to refuse longer to abide the result of the experiment, to set the statute in motion. So long as he did not dissent, he must be taken to have assented to the plaintiff's management; and we must suppose that he did so assent. But if the question of the plaintiff's diligence was in the case, then it was a question for the jury; and it was submitted on right instructions, and the jury found against the defendant. The only case where the courts of this State have taken upon them to decide that a particular course of conduct was or was not according to the requirements of common prudence, is the case of *Briggs* v. *Gleason*, 28 Vt. 180. See POLAND, C. J., in *Hill* v. *New Haven*, 37 Vt. 501, 510; *Brainard* v. *Reynolds*, 36 Vt.

614.   Here there was no positive act proved that went to the discharge of the supposed security obtained by the second suit. There was only the fact of a delay in bringing the matter to a conclusion.   The court could not say, as matter of law, that that was negligence, even though unexplained.   But there were circumstances tending to explain the delay.

Treating the question as one of either law or fact, it does not appear that the defendant lost anything by the plaintiff's management of the suit.   It cannot be said that Flinn's debt was secured by the trusteeing of Ladd.   This could be determined only by a legal adjudication.   *Lovejoy* v. *Lee*, 35 Vt. 430 ;   *Hurlburt* v. *Hicks*, 17 Vt. 193.   The failure to take a default against Warner at the first term was not irregular.   It worked no discontinuance. If a default had been then entered, the judgment would have been only interlocutory, and the cause would have remained pending.   *Sheldon* v. *Sheldon*, 37 Vt. 152 ;   *Jones* v. *Spear*, 21 Vt. 426 ;   *Hapgood* v. *Goddard*, 26 Vt. 401.   The case could not have been pursued against the trustee after the death of Warner and the appointment of commissioners, even if a default had been entered against Warner at the first term.   *Sheldon* v. *Sheldon*, *supra ; Dow* v. *Batchelder*, 45 Vt. 60.

The opinion of the court was delivered by

Ross, J.   I.   By his first and second requests the defendant contends that on the facts of the case the plaintiff has misconceived the form of action ; that it should have been contract rather than case ; that, being an authorized person, and not a regular officer, it was not negligence for him not to obey the command of the precept which he had undertaken to serve, and so fail to secure the plaintiff's debt ; that as he was under no obligation to receive the writ and undertake its service, his only duty to the plaintiff in making the service was that arising from the contract, express or implied, under which he received it from the plaintiff; and that without distinct instructions to attach property he was under no legal obligation to do so.   The court held and instructed the jury that while the defendant was under no legal obligation to receive and serve the writ, if he did receive it from the plaintiff with

directions to secure the debt, and attempted to serve it, it was his duty, without being specifically instructed to do so, to attach property, if openly visible, and if he neglected to do so, he would be liable for the damage. To this instruction, as well as to the neglect or refusal to comply with the requests, the defendant excepted.

The defendant by accepting the writ accepted the special authorization thereon, and became for the purpose of serving the writ clothed with all the powers of a regular officer. His acts under the writ, and in accordance with the statute, bound all parties as effectually as though done by a regular officer. A sale of personal property by a person thus specially authorized on an execution agreeably to the provisions of law, is a valid sheriff's sale, tranfers and protects the property, to the purchaser without change of possession. *Gates v. Gaines*, 10 Vt. 346. He was *pro hac vice* an officer of the law. By accepting the authorization and writ, he bound himself to obey its precepts and discharge the duties imposed by it. Not by the plaintiff but by it, he was commanded and authorized to attach the property of the defendants therein named, if within his precinct. The plaintiff could waive the discharge of this duty, but the jury have found he did not. The defendant's failure to attach property, as commanded by the writ, was an omission or neglect to discharge a duty to the plaintiff which the law, not a contract with the plaintiff, cast upon him. If the omission or neglect was injurious to the plaintiff, the defendant was liable therefor in an action on the case, because he had failed to discharge a duty imposed by the law, and not because he had broken any contract with the plaintiff. We think there was no error in the refusal of the court to charge as requested, nor in the charge as given, on this point. The motion in arrest is mainly based on the position assumed by the defendant that the action is misconceived. This position being untenable, we think there is no such lack of substance in the declaration as renders it insufficient on a motion in arrest. Every legal intendment is to be made in favor of its sufficiency when thus attacked after verdict.

II. The third request to charge relates to the contract of February 19, 1860, and is as follows : " The contract of February 19, 1860, was unsusceptible of ratification so as to be operative to prevent the running of the Statute of Limitations ; but if that contract was susceptible of ratification, there is no evidence in the case tending to show a ratification." That contract was entered into on Sunday, and was introduced by the plaintiff to avoid the effect of the defendant's plea of the Statute of Limitations, which apparently had become a bar to the plaintiff's right of action. By that contract the defendant agrees that if the plaintiff will discontinue the suit on which he had failed to make the attachment, and will commence another suit against the same defendants, and therein summon certain persons as trustees, it shall not affect his liability for failure to make attachment of property on the first, and if he fail to collect his debt by the second suit, the defendant will remain liable to him in the same manner and to the same extent as though the first suit had proceeded to judgment and execution. In regard to this request the court in substance charged the jury that the contract, having been executed on Sunday, was not originally binding, and was inoperative to bar the Statute of.Limitations, unless afterwards ratified. If it was executed before sundown, and after that the parties talked the matter over, arranged to discontinue the first suit and to bring a new one, proceeded to make out another writ, and after 12 o'clock, to give notice of the discontinuance of the first suit, and to make service of the second writ, and that the defendant aided the officer in giving the notice and making the service because he was interested in the event of the second suit, and not because he was requested to do so by the plaintiff, it would be a ratification of that contract. In this, as well as the failure to comply with the request, the defendant insists there was error.

It is well settled in this State—whatever may be the decisions in other States—that the illegality which attaches to a contract executed on Sunday is not an illegality which enters into the subject-matter, or essence, of the contract, and for that reason renders it void : that such contracts only being illegal on account of the day on which they are made, are capable of ratification by any act

which fairly recognizes them as existing contracts, on a subsequent week day, like a promise to perform, or pay the amount stipulated therein, or a part payment of the same, or a refusal to return property fraudulently obtained by such contract, or an offer to rescind by the other party and a demand for the return of the property. *Lovejoy* v. *Whipple*, 18 Vt. 379 ; *Adams* v. *Gay*, 19 Vt. 358 ; *Sargeant* v. *Butts*, 21 Vt. 99 ; *Sumner* v. *Jones*, 24 Vt. 317. These cases go the full length of holding that any act done by the parties on a week day which recognizes it as a contract existing between them, is a ratification. Under the charge of the court, and upon evidence tending to establish the same, the jury have found that after sundown,—the limit of the *mala prohibitia* of that Sunday,—the parties talked up and arranged to discontinue the first suit, and to bring the second ; went on and had the writ made, and immediately after 12 o'clock gave notice of the discontinuance of the first, and made service of the writ in the second, suit, the defendant therein aiding the officer because interested to secure thereby immunity from the consequences of his default in the service of the first writ. Under the decisions cited, we entertain no doubt but this was a ratification of the contract. In the cases cited the plaintiffs were relying upon the illegal but ratified contracts as the causes of action. In the case at bar, the plaintiff is not obliged to show the illegal contract to make out his cause of action, but interposes it only for the purpose of meeting the statute bar brought into the case by the defendant. Contracts executed on Sunday are not declared illegal. It is only the making of them at that particular time that is illegal. It is because thus tainted in regard to the time of their execution that the law refuses to enforce them, but leaves the parties where the contract places them. Whether it can be said that allowing the contract of February 19, 1860, to operate as a waiver of the Statute of Limitations is an enforcement of it may be questionable ; whether it is not rather leaving the parties in the exact positions in which by it they have put themselves, without an enforcement of it against either. But this point we are not compelled to, and do not, determine. On the other ground the exception is overruled.

III. The third point raised by the exceptions is in regard to the plaintiff's manner of prosecuting the second suit, and its effect upon the plaintiff's right of recovery. That suit was entered at the March Term, 1860. The defendants never appeared in the suits. The trustees appeared, and made disclosures the first time, and a commissioner was appointed. Witters was discharged at the next September Term. Ladd, the other trustee, disclosed that he had funds belonging to one of the defendants, but that they were claimed by Hotchkiss. Hotchkiss was ordered to be cited in as claimant. It does not appear whether he was in fact cited in. It does appear that he then, and until after Warner's death in 1868, had a suit pending in Franklin County to recover the funds in the trustee's hands. Nothing further was done in the suit, except that defendant Warner's death was suggested on the docket at the April Term, 1869, and the suit was discontinued by reason of his death at the September Term, 1874. This suit was brought March 16, 1875. On this branch of the case, the defendant requested the court to charge, in substance, that under the contract of February 19, 1860, it was the duty of the plaintiff, " to prosecute the second suit with at least ordinary and reasonable diligence; and as it appears without dispute, that it was not prosecuted, and that if it had been, instead of being allowed to slumber on the docket for fourteen years, and until after the death of Warner, the trustee Ladd would have been adjudged chargeable for more than sufficient to satisfy the plaintiff's claim— the breach of the contract on the part of the plaintiff is fully established."

The court substantially complied with the first part of the request, telling the jury, " it was the duty of the plaintiff to prosecute that suit with all reasonable dispatch, and in the manner in which suits are ordinarily conducted; and if he failed to do so he could at most only recover nominal damages; but that being a trustee suit, it was optional with the plaintiff to have or not to have the principal debtors defaulted for non-appearance. We do not know whether or not the plaintiff's claim against Ashley & Warner was secured by the summoning of Ladd as trustee." " If the plaintiff discharged his duty in the prosecution of the

second suit, the defendant's original liability, if any, would continue through the whole of that proceeding until the death of Warner was suggested upon the docket. If the plaintiff was guilty of negligence in the prosecution of that suit, he would still be entitled to recover nominal damages, provided the defendant was originally liable."

It did appear, as stated in the request, that nothing was done in the suit after the appointment of the commissioner and making the order to cite in the claimant, until after the death of Warner, and so there was no prosecution of it during that time. But the inference attempted to be drawn, that if the suit had been prosecuted, Ladd would have been held chargeable, does not follow from anything which appears in the suit. So that the defendant was not entitled to have the request complied with as a whole. The request, however, called upon the court to give proper instructions upon the effect of the plaintiff's failure to prosecute the suit during the length of time stated. The court properly said that it was not known whether Ladd would have been held chargeable as trustee. Hence there was no error in this. It also said it was optional with the plaintiff to have or not to have the principal debtors defaulted for non-appearance. This was so far true legally that his failure to have them defaulted did not operate to discontinue the suit. But it naturally carried to the jury, coming, as it did, in answer to the request, the import that by such failure the plaintiff was guilty of no negligence or failure to discharge his duty towards the defendant in the prosecution of the suit. In this we think there was error, and the charge was naturally calculated to mislead the jury to the defendant's prejudice. The plaintiff, by accepting the defendant's proposition to discontinue the first and bring the second suit, bound himself to use all reasonable efforts to make that suit available for payment of his debt. By his failure to go forward in the prosecution rapidly, he lost his chance to try the question of the liability of the trustee Ladd, and so of making the suit available to that end. Allowing the suit to slumber on the docket eight years, unexplained, was such evidence of negligence and a failure to prosecute the suit in due course of law, that the court should have called the attention of

the jury to it in that character, instead of charging that it was optional with the plaintiff to have or not to have the defendants in that suit defaulted for non-appearance. Such failure to prosecute, especially when by the intervention of the death of Warner after such lapse of time, all chance of making the suit available for the purpose for which it was instituted, the relief of the defendant, was lost, cast the burden upon the plaintiff to show a reasonable excuse for his inaction. The only excuse claimed was, that Hotchkiss had a suit pending during all this period in Franklin County, to determine his right to hold Hotchkiss for the funds in his hands. Whether this fact would lead an ordinarily prudent and vigilant man to delay prosecuting his own suit for such a length of time, was the real question for the jury to determine on this branch of the case. But the court failed to bring this phase of the case to the attention of the jury when its attention was called to this feature of the case.

For this error the judgment of the County Court is reversed, and the cause remanded.