Hillsborough, ⎱
 Dec. 6, 1910. ⎰

### LOVELL v. BOSTON & MAINE RAILROAD.

A contract which the parties thereto are forbidden to make by the *lex loci contractus* is invalid and cannot be enforced in this jurisdiction.

A shipper of freight is not estopped to set up the invalidity of a Sunday contract of carriage because transportation was completed at a time when the agreement might have been legally made, nor by his acceptance of the goods at their destination when it appears that no other course was open to him.

If goods shipped under an invalid contract limiting the carrier's liability are injured in transit to an amount exceeding the reduction in rates made as a consideration for the special agreement, the owner is not required to tender the difference in charges before repudiating the contract and suing for the full amount of his loss.

CASE, for injuring the plaintiff's mare while transporting her from Bellows Falls, Vermont, to Nashua, *via* Ayer Junction, Massachusetts. Trial by jury. Transferred from the May term, 1910, of the superior court by *Chamberlin*, J.

On Sunday, July 26, 1908, the plaintiff delivered the mare to the

defendants and signed the contract on which they rely. The mare left Bellows Falls Sunday afternoon, was injured at Ayer Junction some time the same night, was shipped thence Monday morning, and was accepted by the plaintiff on arrival at Nashua. An employee of the plaintiff accompanied the mare in transit. Under the law of Vermont, a contract made on Sunday in the course of business is void, but it may be ratified on a subsequent week-day by any act of the parties recognizing its existence.

By the contract of shipment, the plaintiff agreed that in the event of loss or damage the defendants' liability should be limited to $100, and they contended that he was not entitled to recover more than that sum in this action. The plaintiff claimed that the contract relied upon by the defendants was invalid and sought to recover the full value of the mare, on the ground that the defendants' liability was that imposed by the common law upon a common carrier of freight. At the close of all the evidence, the court ruled that the plaintiff could recover no more than $100 and directed a verdict for him in that sum, and the plaintiff excepted.

*Doyle & Lucier* (*Mr. Lucier* orally), for the plaintiff.

*Edgar J. Rich* and *Matthew Hale* (both of Massachusetts) and *Hamblett & Spring* (*Mr. Rich* and *Mr. Spring* orally), for the defendants.

Young, J. The defendants concede that if the contract " is void because executed on Sunday, and the plaintiff is in a position to interpose this objection," his exception should be sustained. Their first position is that the contract is valid, notwithstanding the parties were forbidden to make it by the *lex loci contractus*, because it would have been legal if made in Massachusetts, the place where it was to be performed in part and where the accident happened, or because so much of the carriage as was to be done in that commonwealth was legal. In other words, they say that at common law the validity of a contract is to be determined by the law of the place where it is to be performed. If by the common law is intended the common law as it is understood in Massachusetts, where the accident happened, the validity of this contract must be determined by the law of Vermont; for if this action were pending in that commonwealth, that is the rule which would be applied to determine the validity of the contract. 23 Harv. Law Rev. 98, where the Massachusetts cases on this question are cited. That would seem to be a complete answer to the defendants' first position. *Limerick Nat'l Bank* v. *Howard*, 71 N. H. 13.

But however that may be, if it is assumed that the validity of

the contract is to be determined by the view of the common law which obtains in this jurisdiction, the defendants' contention cannot be sustained; for the reasoning of *Barter* v. *Wheeler*, 49 N. H. 9, 29, and the cases which follow it, on which the defendants rely, do not sustain the contention that the validity of a contract is to be determined by the law of the place in which it is to be performed. All these cases hold is that a contract will be interpreted in accordance with the law of the place in which it is to be performed (*Limerick Nat'l Bank* v. *Howard*, 71 N. H. 13; *Rixford* v. *Smith*, 52 N. H. 355, 362; *Gray* v. *Jackson*, 51 N. H. 9; *Barter* v. *Wheeler*, 49 N. H. 9) and not that its validity is to be determined in that way. *Davis* v. *Osgood*, 69 N. H. 427; *Little* v. *Riley*, 43 N. H. 109, 113. In short, the reasoning of these cases presupposes a contract the parties were permitted, or at least not forbidden, to make by the *lex loci contractus*, and they hold that even such a contract will not be enforced when it would not be legal if made in the place in which it is to be performed. *Thayer* v. *Elliott*, 16 N. H. 102. These cases, therefore, do not sustain the contention that this court will enforce a contract the parties were forbidden to make by the *lex loci contractus*, when it appears that it would have been legal if made in the place in which it was to be performed. Neither does the rule usually applied in this jurisdiction to determine when a contract made in one place, but to be performed in another, is valid. According to that, the validity of the contract is to be determined by the *lex loci contractus*. In other words, a contract the *lex loci contractus* forbids the parties to make will not be enforced in this jurisdiction (*Davis* v. *Osgood*, 69 N. H. 427); but one which is valid where it is made will usually be enforced here. *Seely* v. *Insurance Co.*, 72 N. H. 49; *Dorntee Casket Co.* v. *Gunnison*, 69 N. H. 297; *Cleveland Machine Works* v. *Lang*, 67 N. H. 348.

Although all contracts to do an illegal act are invalid, the converse of that proposition is not true. It does not follow from the fact that the carriage of the mare on Sunday was legal in Massachusetts, that the contract under which it was done is valid. The legality of an act and the validity of the contract under which it is to be done are as separate and distinct entities as the act of making the contract and that of doing any of the things it contemplates. The making of a contract is an act and, like all other acts, depends for its validity on the law of the place where it is done; so when the contract is not made in the place in which it is to be performed, its validity depends on the law of one jurisdiction, and the legality of the act to be done on that of another. A contract may be invalid when the act to be done is legal, both where the contract is made and where it is be performed (*Davis* v. *Osgood*, 69 N. H. 427); for not only is a contract to do an illegal act invalid, but one to do a legal

act is also invalid if it is made at a time or in a way the *lex loci contractus* forbids the parties to make it.

The test, therefore, to determine the validity of a contract is to inquire whether the *lex loci contractus* forbade the parties to make it—not whether it forbade them to do the act or acts it contemplates, nor whether the parties are forbidden to do them by the law of the place where they are to be done. If this test is applied to the facts of this case, the contract is invalid because made at a time when the parties were forbidden to make it by the law of Vermont —the *lex loci contractus*. This makes it unnecessary to consider the defendants' contention that the common law permits the making of the contract when the act is legal in the place in which it is to be done, even though it would be illegal if done in the place where the contract is made; and as to that contention no opinion is intended to be expressed.

The second question to be considered is whether "the plaintiff is in a position to interpose" the objection that the contract is invalid because made on Sunday. The answer to that question depends on whether he has recognized the contract at a time when it could have been legally made by the law of Vermont. *Flinn* v. *St. John*, 51 Vt. 334, 345. The fact that the defendants completed the shipment of the mare at a time when it would have been legal to make the contract has no tendency, in and of itself, to prove that the plaintiff recognized it. They do not contend that he is bound by the acts of the man in charge of the mare, or that that man was authorized to do anything more than care for the mare while in transit. It may well be that, if the plaintiff had accompanied the mare, his permitting the defendants to continue the shipment on Monday would be a recognition of the contract; but he did not accompany her. Neither is the fact that the plaintiff accepted the mare on her arrival sufficient to sustain a finding that he recognized the contract. There was nothing else he could do; and accepting her under these circumstances was at least as consistent with an intention to repudiate as with one to recognize the contract.

The contract provided, in effect, that the defendants would carry the plaintiff's mare from Bellows Falls to Nashua for a definite amount if he would assume the risk of her reaching there in safety, and he paid them what they were to receive for doing the work. Consequently the question whether he has received any benefit from what they did in pursuance of the contract depends on whether the loss he sustained because of the injury to the mare is greater or less than the difference between the sum he paid and the sum he would have had to pay, but for the special contract. As the facts are understood, his loss is much greater

than that difference. Consequently it is unnecessary to consider whether the law of Vermont permits a person who receives and retains the benefit of what is done under a contract to deny its validity.

*Plaintiff's exception sustained.*

All concurred.