### Isaac Myers *vs.* Samuel Meinrath.

An action will not lie for the conversion of a chattel, sold and delivered by the plaintiff to the defendant in exchange for another chattel on the Lord's day, and retained by the defendant afterwards, notwithstanding the return by the plaintiff of the chattel for which it was exchanged and his demand for a corresponding return by the defendant.

Tort for the conversion of a coat; submitted to the determination of the superior court, and, on appeal, of this court, upon these facts agreed:

" The plaintiff and the defendant, on the Lord's day, made a trade, whereby the defendant sold the plaintiff a set of jewelry, and the plaintiff sold the defendant a coat of the value of twenty-three dollars, which the defendant received in part exchange for the jewelry. A few days afterwards, the plaintiff, declining to keep the jewelry, returned it to the defendant. Afterwards the plaintiff requested the defendant to pay him the price of the coat; but the defendant refused so to do, alleging that he would lose more than the price of the coat by reason of the plaintiff's refusal to keep the jewelry. Thereupon the plaintiff brought an action for the price of the coat, which the defendant successfully defended on the ground of the illegality of the contract. The plaintiff then made a demand upon the defendant for the coat, which was still in the defendant's possession; but the defendant refused to return it, and now retains it. And upon such refusal this action is brought by the plaintiff to recover the value of the coat."

*F. W. Kittredge*, for the plaintiff.

*H. W. Bragg*, for the defendant.

WELLS, J. That contracts made upon the Lord's day are illegal; that no action based upon such a contract can be maintained in a court of law or equity, either to enforce its obligations or to secure its fruits, in favor of either party; are propositions settled beyond controversy. But such contracts are not altogether inoperative. They may be executed by the parties, and then the same principle of public policy which leads courts to refuse to act, when called upon to enforce them, will prevent the court from acting to relieve either party from the consequences of the illegal transaction. This may indirectly give effect to the executed illegal contract. The purpose of the rule of law, however, is not to give validity to the transaction, but to deprive the parties of all right to have either enforcement of or relief from their illegal contracts. In such cases, the defence of illegality prevails, not as a protection to the defendant, but as a disability in the plaintiff.

Upon this principle, possession, acquired from an illegal transaction, or by a contract fully executed, will often avail the party

holding it, as a sufficient title. Neither party is allowed to impeach its validity by asserting the illegality of his own act. The transaction takes effect from the disability of the parties to assert any right to the contrary. The court does not give it effect, but simply refuses its aid to undo what the parties have already done. Chit. Con. (10th Am. ed.) 732. *Johnson* v. *Willis*, 7 Gray, 164. *King* v. *Green*, 6 Allen, 139. *Worcester* v. *Eaton*, 11 Mass. 368.

The plaintiff relies upon certain intimations in the opinion by which the decision of the court was announced in the case of *Ladd* v. *Rogers*, 11 Allen, 209. The contract was there held to be illegal, so that no action could be maintained for the price of a horse sold and delivered upon the Lord's day. It was also held that no implied assumpsit for the value of the horse arose from the fact that the defendant afterwards retained and treated the horse as his own. This last point was decided upon the general principles applicable to assumpsit, and not on any ground of taint from the original illegality. The opinion also strongly intimates that the sale was wholly nugatory, passed no property and gave no rights; and that the plaintiff might have maintained trover for the conversion of the horse, notwithstanding the sale and delivery.

The case of *Williams* v. *Paul*, 6 Bing. 653, arose upon a similar state of facts, with the addition of a subsequent promise to pay. The court held that the value of the property — not the price agreed for on Sunday — might be recovered upon *quantum meruit.*

There are other authorities to the effect that, where there has been only a partial execution of an illegal contract, the party who has advanced money or delivered property under it may reclaim and recover it. This is sometimes put upon the ground that it is better to encourage the revocation than the fulfilment of such contracts; sometimes upon the ground of a difference in the position of the parties in respect to the illegality of the transaction, or of some advantage taken or fraud committed by one upon the other. Upon this latter ground, the case of *Adams* v. *Gay*, 19 Verm. 358, appears to have been placed. In that case there had been an exchange of horses on Sunday. The

whole transaction was completed on that day. One of the parties, being cheated in the trade, undertook to revoke, and was allowed to recover, not on the ground that the whole transaction was void and inoperative, but on the ground of fraud in the other party, and as an exception to the general rule. The judgment did not rest upon that ground ; but the doctrine, substantially as above stated, was announced by the court as the reason for refusing to allow the defendant, after argument upon exceptions, an opportunity to set up the defence of illegality under the statute of another state. Upon the point stated in *Adams* v. *Gay,* that an action lies for fraud in a contract void for illegality, the decisions in Massachusetts are clearly to the contrary. *Robeson* v. *French,* 12 Met. 24. *Way* v. *Foster,* 1 Allen, 408. *Gregg* v. *Wyman,* 4 Cush. 322.

It is a question undoubtedly to be determined by the court upon considerations of public policy. But those considerations must be general, and not such merely as arise out of the facts of the particular case. Where the payment or delivery is made for the furtherance of an immoral or illegal purpose, the court will not help the guilty party to revoke, although another, equally guilty, may thereby make an undeserved gain. But where the illegality consists in the time or mode in which the transaction takes place, and not in the character of the transaction itself, the court will undoubtedly regard the position of the parties in respect to the subject matter. Thus in the case of a horse delivered in pursuance of an illegal contract of hire on the Lord's day, although the owner cannot recover upon his contract, and can have no remedy for excessive use or injury to his horse while in the possession of the hirer, yet he is not deprived of his title to the horse, and he may at any time retake possession and thus be restored to all his rights. The fact of an illegal bailment or delivery, without any purpose to pass the title, will not enable the party receiving the property to convert it to his own use, or withhold it from the owner, without any legal liability therefor. *Dwight* v. *Brewster,* 1 Pick. 50, 55.

In case of a contract of sale not executed by payment of the consideration, when the contract remains executory on one side

the law which declares the executory part of the contract void might well regard the partial execution ineffectual. It is not necessary, however, to decide the point, inasmuch as in the present case the contract was completely executed on both sides, the parties are *in pari delicto*, and, by refusing to aid either party in the attempt to restore himself to his former position, we leave him in the condition in which he has placed himself by his own illegal conduct. That, as we understand it, is the aim of the courts in applying the general rule upon this subject.

The plaintiff contends that the rule does not apply, because he does not seek to enforce any rights which depend at all upon the illegal transaction ; that both the legal title which he asserts, and the proof by which he maintains that title, not only omit to disclose, but utterly disregard the unlawful sale ; whereas it is the defendant who is obliged to set up the illegal conduct of himself and the plaintiff alike, in order to justify his retention of the plaintiff's property. But the illegality lies directly in the course of events which placed the property in the hands of the defendant, and made it necessary for the plaintiff to resort to this suit to regain it. It is inseparably connected with the origin of the cause of action, and it is immaterial which party discloses it to the court. *Gregg* v. *Wyman,* 4 Cush. 322. *Duffy* v. *Gorman,* 10 Cush. 45. The ends of justice are found to be best secured by permitting it to be thus administered upon one of two offending parties at the instigation of the other.

The decision of the superior court is accordingly affirmed.

*Judgment for the defendant.*