LILLIAN M. BROWNELL & another *vs.* JAMES NASON & others.

Essex. January 29, 1930. — February 27, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*Contract,* Building contract: Performance and breach, Rescission, Validity. *Fraud*

In a suit in equity seeking the rescission of a sale of real estate, or damages, by reason of false representations by the defendant, it was found by a master that the seller had erected an apartment house on the land before the sale; that he had submitted plans for the building to the department of public safety under G. L. c. 143, and to the inspector of buildings of the city in which the land was, and had received a building permit from each of them on the basis of such plans; that the State inspector and the city inspector subsequently authorized a deviation from the plans with reference to the materials to be used in a center partition wall; that the materials actually used were different in some respects from those so authorized; that both inspectors later approved the construction and "passed" the building,

as required by the agreement of sale; that there was no law or ordinance requiring a partition wall to be constructed as specified in the plans; that the partition wall as constructed did not render the building less safe; that there was no material deviation from the requirements of law in the construction of the building; that the plans were not shown to the plaintiff before the execution of the agreement; that the defendant made no misrepresentations to the plaintiff respecting the construction of the building; and that the plaintiff purchased in reliance on his own examination of the rooms, rents and operating costs, and not on the walls' having been built of any particular material. The bill was dismissed. *Held,* that

(1) The plaintiff failed to establish the allegations contained in his bill;

(2) In view of the finding that there had been no material deviation from the requirements of law, there was no merit in a contention by the plaintiff that the building could not be the subject of a valid sale in that it had been built in violation of law;

(3) Furthermore, even if there had been a violation of statute or ordinance in certain respects, the defendant would not have been prevented from making a valid sale merely by reason thereof;

(4) The bill properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on May 1, 1929, having been commenced by a common law writ dated April 15, 1929.

The suit was referred to a master. The bill and material facts found by the master are described in the opinion. The suit was heard by *Qua,* J., by whose order there was entered a final decree dismissing the bill. The plaintiff appealed.

The case was submitted on briefs.

*E. A. Counihan, Jr.,* & *G. A. McLaughlin,* for the plaintiffs.

*H. D. Linscott* & *S. Parsons,* for the defendants.

CROSBY, J. This is a bill in equity in which the plaintiffs seek rescission of a sale of real estate on the ground of fraud, or in the alternative that they be awarded damages. The case was referred to a master. It was ordered that an interlocutory decree be entered overruling the plaintiffs' objections to the report and confirming the same, and that a final decree be entered dismissing the bill with costs. Thereafter a final decree was entered dismissing the bill with costs. The plaintiffs appealed. James Nason, being the principal defendant in interest, will herein be referred to as the defendant.

The facts found by the master so far as material are as follows: One Edith M. O'Brien in the spring of 1927 was

the owner of a parcel of land in Everett. She employed one Porter, an architect, to prepare plans for an apartment house to be erected on the land, to find a contractor to erect it, and to obtain mortgages to finance the costs of its construction. Porter interviewed the defendant with the result that mortgages were placed, and an agreement was made between Mrs. O'Brien and the Nason Construction Co., Inc., of which the defendant was the president, for the erection of the building. The plans were for a fifty-two-room brick and frame apartment house of "second-class" construction. The architect filed blue prints with the supervisor of plans at the State House as required by G. L. c. 143, and obtained from him a certificate of approval. The certificate contained certain requirements under the rules of the building division of the State department of public safety, made under the authority of G. L. c. 143, relating to fire prevention. This certificate was the only approval of the plans obtained under the statute. The requirements printed on the certificate were carried out by the Nason Construction Co., Inc., in the erection of the building. The architect also filed a copy of the plans with the inspector of buildings of the city of Everett, and obtained from him a certificate of approval in the form of a building permit.

During the construction of the building it was inspected from time to time by an inspector of the building division of the State department of public safety, and also by the building inspector of Everett. Each wing of the building is separated from the center by a wall that has no opening. In the basement each of these walls from the foundation to the first floor is of twelve-inch solid brick. Above the first floor the partitions are not twelve inches thick. The superintendent of the Nason Construction Co., Inc., being in doubt as to the requirements for the construction of these partition walls, consulted State and city inspectors, and was informed by the city inspector that wooden studs with wire laths would be sufficient, and by the State inspector that such construction would be satisfactory to him. There was no specific statute, regulation or city

ordinance applicable to this matter except the general authority given the State inspection department to make such other provisions and requirements as might be necessary in the interest of safety and fire prevention. The State inspector informed the superintendent that these walls above the first floor should be of wire metal lath and hard plaster with two courses of brick above each floor level for fire prevention. He gave no written instructions to that effect, and did not notify the State supervisor of plans of this direction to the superintendent. The building of these walls was sublet by the construction company to a subcontractor who was required to build as above directed. The superintendent of the construction company testified that he supposed the walls were so built. Metal laths were used on three of the four sides of the two partition walls, but on the fourth, wooden laths were substituted in at least two places, and the fire stopping was not carried up two courses of brick above the floor, but in two places that the witness examined the bricks were about flush with the level of the floor. Plaster made of lime, sand and hair was used instead of hard plaster. All the work above described was completed by the construction company while the property was owned by Mrs. O'Brien. The agreement for the sale to the plaintiffs by the defendant was dated September 21, 1927. At this time the building was completed with the exception of some minor matters, and several of the apartments were occupied.

The master further found that no misrepresentation was made to the plaintiffs by the defendant relative to the material, type or structure of the walls, except the statement that there was no opening in the walls and that the wings were entirely separated from the center; that in making the agreement the plaintiffs did not rely upon the walls being fire walls or that they were built of any particular material, and that their type of construction did not influence them in any respect; that the provision in the contract that the defendant "will complete in every detail the apartment house" was understood by the parties not to refer to the partition walls which were already

built but to the completion of the work then unfinished; that the State inspector and the city inspector both approved the construction of the building, although they were ignorant of the existence of the wooden laths and of the absence of the specified fire stop, but that both of them must have known that the hard plaster was not used. Both inspectors testified, and the master found, that the building was satisfactory to them, and that so far as they knew it complied with the requirements of their respective departments; that no complaint had ever been made by either of them or by any one else in authority that the building did not comply with the law or with any State or city regulations, rules or ordinances.

Although the plaintiffs contended that the plans called for a solid brick wall separating the wings from the center from the basement to the roof, and that this was a reasonable interpretation of the plans, it is stated by the master that "there is no State or local law, regulation or ordinance requiring such a wall to be constructed, and the superintendent secured the approval of [the] State . . . and city . . . [inspectors] to the erection of a stud wall with metal lath and plaster." At that time the plaintiffs had no interest in the property, they having subsequently purchased it from the defendant. The master found that the plaintiff Mrs. Brownell testified that, before she decided . to buy, the defendant showed her the plans and pointed out the partition walls, describing them as "fire walls," and stated that they made the building safer and more valuable. The master states that he does not find that any such conversation took place or that the plans were ever shown her or examined by her before she took title, but that she examined the rooms, learned of the rents, estimated the operating costs and made the purchase in reliance on these facts, and raised no question on account of the fire walls not being mentioned in the agreement. The master further found that the use of wooden laths and plaster in the wall as before described and the construction of the fire stops were a variation from the instructions given by the State and city inspectors, but he further

found that both inspectors knew of the plaster used and, tacitly at least, authorized it and subsequently approved it.

The conclusion of the master was that there were no misrepresentations or false statements made by the defendant regarding the construction of the building, and that no reliance was placed thereon by the plaintiffs; that the building as constructed was actually "passed by State and local inspectors" as required by the agreement of sale; that the building was "completed in every detail" in accordance with the parties' understanding of the agreement. It was also found, in substance, that the partition walls as constructed did not make the building less safe in case of fire than it would be with all metal laths, hard plaster and higher fire stopping, and did not make it dangerous for use as an apartment house. The master states: "It simply is not of the same construction as it would have been, had the intent of the original plans or the instructions of the inspectors been followed to the letter. Accordingly, I find that there was no substantial or material deviation from the requirements of the law in the construction of the building."

As the evidence is not reported, the findings of the master are conclusive unless it appears from the report itself that they are clearly wrong. The findings that there were no misrepresentations or false statements made by the defendant respecting the construction of the building, and that it was completed in every detail in accordance with the parties' understanding of the agreement, together with the other findings herein referred to, fail to support the allegations of the bill that the plaintiffs were induced to enter into the agreement by reason of the fraud or misrepresentations of the defendant.

The plaintiffs contend that the building was constructed in violation of law and for that reason could not be the subject of a valid sale. An answer to this contention is that the master has found that there was no material deviation from the requirements of law in the construction of the building. In the absence of such a finding, the contract of sale was not invalid even if the building had

been constructed in certain respects in violation of the provisions of a statute or ordinance. Although a person may be convicted of a criminal offence for a violation of the provisions of G. L. c. 143, §§ 15–60, inclusive, and punished by fine under § 16, *Commonwealth* v. *Gardner*, 241 Mass. 86, it does not follow that the owner of such a building is divested of his title or that he may not make a valid sale thereof. It was held in *Ordway* v. *Newburyport*, 230 Mass. 306, that where a contractor had furnished material and performed labor under a contract for heating a school house, and plans for such heating had been disapproved by an inspector to the knowledge of the plaintiff, the latter was not deprived of his right to recover if he performed his work in accordance with the plans and specifications of his contract with the general contractor. If there was a violation of G. L. c. 143, § 15, which would subject the defendant in the case at bar to a penalty, that circumstance did not prevent him from making a valid sale to the plaintiffs if such sale was made without fraud or misrepresentation on his part. If there was a violation of the statute by the defendant, that circumstance did not affect the rights of the parties under a valid contract for the sale of the property. If there was merely a failure by the defendant to comply with the statute, such failure is not an invasion of the plaintiffs' private right. *Hagerty* v. *McGovern*, 187 Mass. 479. *Rudnick* v. *Murphy*, 213 Mass. 470. *O'Keefe* v. *Sheehan*, 235 Mass. 390, 397, 398. *O'Brien* v. *Turner*, 255 Mass. 84. *Morley* v. *Police Commissioner of Boston*, 261 Mass. 269, and cases cited at page 278. The following cases cited by the plaintiffs are not applicable to the facts in the case at bar. *Wheeler* v. *Russell*, 17 Mass. 258. *Levy* v. *Gowdy*, 2 Allen, 320. *Langton* v. *Hughes*, 1 M. & S. 593. *Law* v. *Hodson*, 11 East, 300. *Bartlett* v. *Vinor*, Carth. 251. The rule of law that no action will lie upon a contract made in violation of a statute, or of a principle of the common law, is not applicable to the facts in the case at bar. The findings of the master preclude the maintenance of the bill.

*Decree affirmed with costs.*