Pettingell, P. J.
Two reports growing out of an action of replevin. A demurrer was overruled and the defendant claimed a report. The case was then heard on its merits with a decision against the defendant; he claimed a second report. The case comes to the Appellate Division with the two reports set forth in separate documents. Conciseness, economy and general convenience would have been better served if the two reports had been combined in one. Even if they represent different aspects of the case, it would have been simpler, more convenient and less confusing if they had come as two chapters of one volume rather than as two distinct and disconnected volumes. There could have been, also, less confusion and more compactness in the briefs presented.
The plaintiff as a dealer sold to the defendant at various times parcels of household goods represented by four conditional sales agreements, dated respectively, September 16, 1936, August 30, 1937, September 9, 1937 and January 12,1938. The plaintiff brings replevin to recover the goods thus sold, the defendant being in arrears in the payments due on all four contracts, and having moved the furniture in violation of the terms of the contracts, without the plaintiff’s knowledge or permission. The defendant admits that his act in removing the furniture was such a violation.
The defendant admits, also, the plaintiff’s right to replevy the property sold September 16,1936; as to the three other contracts the defendant pleads the illegality of the contracts, and finally, a suggestion of bankruptcy. It was agreed that he filed a voluntary petition to that effect, March 7, 1942, prior to the date of the replevin writ, July 15, 1942; that the debts created by the four contracts, al *93 ready described by date, were included in his petition, and that he was duly discharged from his debts. It was agreed, also, that the trustee in bankruptcy had recognized the defendant’s claim of the statutory exemption of the household furniture; and that the trustee had released to the plaintiff any right which he, as trustee, had against the said property.
The main contention of the defendant, expressed both in his demurrer to the declaration and in his answer, is the illegality of the three contracts. There appears in each of the three contracts which the defendant is contesting the following clause,
“Lessee hereby agrees that in consideration of the delivery to the Lessee of the above mentioned goods if the same be an addition to goods already delivered and held by Lessee in written lease or leases, all payments made by Lessee thereafter may be applied at the discretion of the said Lessor to any specific article or articles now held by Lessee under this or any prior lease.”
The defendant contends that the enactment of St. 1937, c. 315, effective August 17,1937, made a contract containing the clause just quoted, illegal. That statute, an amendment of G. L. (Ter. Ed.) C. 255, added to that chapter a new section, as follows:
“Section 13c. Each conditional sale which includes one or more articles of household furniture or other household or personal effects, except jewelry, shall be embodied in a single written contract. When a payment is made by the vendee under the terms of any such contract, such payment shall be endorsed on the contract or on the promissory note which is evidence of the obligation of the vendee or shall be set forth in a receipt given to the vendee. Such receipt shall include the amount of the payment made and the balance due on the contract, with a specific identification of the contract to which the payment is applied.”
*94 Section 13d, also added by the St. 1937, c. 315, fixed as the penalty for a violation of Section 13c, a fine of not less than one hundred dollars nor more than five hundred dollars.
Section 13c, effective August 17,1937, was stricken out of G. L. (Ter. Ed.) C. 255, by St. 1939, c. 509, August 12,1939, but was added to the chapter, in an enlarged form, as a new Section 12. The three contracts which contain the clause, said by the defendant to be illegal, were executed while St. 1937, c. 315 was in force in its original form.
The trial judge found that
“Each of the conditional sales in question was embodied, as the statute required, in a single contract which contained the entire agreement between the parties, a description of the furniture sold, a statement of (a) the gross purchase price, which was the cost price, there being no interest, insurance or other charge, and (b) the terms of payment and (e) all other information required by law. Whether the provision in each contract authorizing the plaintiff to apply, in its discretion, all payments to any specific article or articles held by the defendant under any contract made between the parties, was valid or invalid, I have not undertaken to determine for the reason that the plaintiff did not exercise such discretion. I rule that even if the provision in question be null and void, the remaining provisions of the contract are not for that reason invalid.”
At the time of the execution of the contract dated September 16, 1936, which is not affected by the Acts of 1937, Chapter 315, and at the times of the execution of those dated August 30,1937, and September 9,1937, a copy of each contract was delivered to the defendant, also three books, numbered respectively 6761, 6761A and 6761B, in which the entries required by law regarding charges and credits were entered and payments were to be entered.
In January, 1938, there was a transaction slightly different, On January 10, 1938, the defendant’s wife went to *95 the plaintiff’s store and bought articles on a conditional sales contract which she stated that she would sign the next day. The price of the articles thus purchased by her was $51.45. She signed the contract as promised and none of the articles bought on January 11, 1938 were among those replevied. The following day, January 12, 1938, the defendant visited the store and bought under conditional sales contract 6761C other articles to the value of $209.21, first making an agreement to return for a credit of $50 to be given him, for the return by him of certain articles purchased September 16, 1936 under contract 6761. He returned those goods and received a credit of $50 on account of the purchase price of $209.21, leaving a balance due of $159.21. A receipt book given him, numbered 6761C in which under the heading “Charge” was entered the price of the articles purchased January 11, 1938, or $51.45, and the purchases of January 12, 1938, as $159.21. There was entered also a payment made of $3.00, and the balance due was set down as $207.66. The purchases of January 10, 11, and 12 were thus combined in one contract. It appears from the trial judge’s finding that the first purchases were made by the wife January 10, that she came back the next day, as she said she would, and signed a contract. The day after that the husband bought other items on a contract which was numbered 6761C, turning in as part payment for the same, goods received by him on an earlier contract.
Despite the time involved, this was apparently all one sale, the wife negotiating the first part of the sale one day, the contract being issued and signed the next, and the husband adding to it the third. The finding of the trial judge was that the articles bought by the husband the third day were bought by the husbajnd “under contract of sale No. 6761C”. The statute does not call for a separate contract for each item sold, but a contract for “each additional *96 sale”. In practice a sale of house furnishings may cover several days of examination, comparison, inspection, and negotiation; nothing in the statute says that it must be completed in one day, or that the transaction of each day constitute a completed sale. It is a question of fact what and when each transaction was. The Statute does not prescribe at what stage of the sale the conditional agreement is to be signed. It requires all of one sale to be in one contract.
In our opinion the transaction of January, 1938, including in one contract No. 6761C, the articles sold in three days, was not a violation of St. 1937, c. 315, either in fact or as matter of law.
The error relied upon by the defendant consists of the overruling of his demurrer, the denial of nine rulings requested by him, the qualified denial of five others, the granting of six rulings requested by the plaintiff and various rulings made by the trial judge. The rulings filed by the defendant, which werfe denied, and the dispositions of the same by the trial judge, are as follows:
“1. The evidence warrants a finding for the defendant under the contract dated August 30, 1937 account No. 6761A. *Denied.
“2. The evidence warrants a finding for the defendant under the contract dated September 9, 1937, account No. 6761B, (so endorsed on the receipt-book but marked ‘add. 6761-A on the signed contract’). Denied.
“3. The evidence warrants a finding for the defendant under the contract dated January 12, 1938. Account No. 6761-C. Denied.
“4 (a). The contract of August 30, 1937 violates Acts of 1937, Chapter 315, and is void. Denied.
*97 “4 (b). The contract of August 30, 1937, violates Acts of 1937, Chapter 315, and. the plaintiff" cannot maintain this replevin for the goods covered by said contract. Denied.
“5 (a). The contract of September 9, 1937 violates Acts of 1937, Chapter 315, and is void. Denied.
“5 (b). The contract of September 9, 1937 violates Acts of 1937, Chapter 315, and the plaintiff cannot maintain this replevin for the goods covered by said contract. Denied.
“6 (a). The contract of January 12, 1938, violates Acts of 1937, Chapter 315, and is void. Denied.
“6 (h). The contract of January 12, 1938, violates Acts of 1937, Chapter 315, and the plaintiff cannot maintain this replevin for the goods covered by said contract. Denied.
“7. The entry in the receipt book. Account No. 6761-C of the price of the range and other items purchased in the contract dated January 10, 1938, and the additional entry in said book of the price of the goods in the contract dated January 12, 1938 was a violation of the Acts of 1937, Chapter 315, and both contracts are void. Denied ‘on the facts found’.
“8. The entry in the receipt book, Account No. 6761-C of the price of the range and other items purchased in the contract dated January 10, 1938, and the additional entry therein of the price of the goods in the contract dated January 12, 1938, was a violation of the Acts of 1937, Chapter 315; and the plaintiff cannot maintain this replevin for the goods covered by said contract of January 12, 1938. Denied ‘on the facts found’.
“9. If the court find as a fact that a payment was not applied to the contract in account No. 6761-Ih relating to the studio couch, according to the directions of the defendant on January 5, 1942, the plaintiff cannot maintain this replevin for the studio couch. Denied ‘being based on an assumption of facts not found’.
“10. To permit the plaintiff to stipulate in advance for the right to apply payments at his discretion would *98 be to defeat the primary purpose of the Acts' of 1937, Chapter 315. Denied'‘as inapplicable to the facts fownd’.
‘ ‘ 14. If the court finds as a fact that a payment in an amount less than the balance due ($6.50) on January 5, 1942, on account No. 6761-B, relating to the studio couch, was applied contrary to the instructions of the defendant, then the difference between those two amounts ($6.50. less $2) was applied to the other accounts in violation of the law and the plaintiff cannot maintain this replevin for the goods in the contracts, (other than the first contract) to which said difference was misapplied. Denied ‘being based on an assumption of facts not fownd’,”
As to the application of the payments made by the defendant, referred to in requests 9 and 14, there was conflicting testimony, the defendant testifying that on several designated occasions he asked to have payments applied on specific accounts and that such applications were denied, and Tollman, the defendant’s credit manager, testifying to the contrary. After reviewing the evidence on this point the trial judge found as follows:
“An examination of the four receipt books offered in evidence by the defendant shows that when any payment was made by the defendant to the plaintiff, in every instance, some portion thereof was credited by the plaintiff to the payment of the selling price in each of the contracts then existing. Such disclosure tends to support Tollman’s testimony, and the defendant himself admitted on cross examination that whenever he went to make a payment he had with him all four Receipt-books and always gave the four books with the money, and I find upon all the evidence that every application of the plaintiff of .the defendant’s payments were made with the tacit assent of the defendant.”
The rulings granted at the request of the plaintiff are as follows: •
*99 “1. The evidence warrants a finding for the plaintiff. 2. The evidence does not warrant a finding for the defendant because: A. The defendant was in arrears in payment under the conditional sales contracts, had received demands for possession of the goods replevied, and had moved the goods replevied without the consent of the plaintiff. B. The contracts of conditional sales were valid. C. Title to the goods replevied had never left the plaintiff. 3. All of the conditional sales contracts covered the goods replevied were legal. 5. At the time of service of the writ in this case, the plaintiff had title to the goods replevied. 6. The defendant having violated the terms of the conditional sales contracts under which he had possession of the goods replevied, and the plaintiff having title to said goods, the plaintiff was entitled to possession of said goods, and should have judgment in this proceeding. 7. The defendant had violated the terms of the conditional sales contracts under which he received possession of the goods replevied from the plaintiff, by: A. Moving said goods without the consent of the plaintiff. B. Placing a part of the said goods in storage without the consent of the plaintiff. C. By failing to make payments for said goods in accordance with the terms of said contracts.”
The first issue is whether the clause objected to as illegal, and appearing in the three later contracts, made the contracts illegal, per se.
St. 1937, c. 315, prescribed first, a separate contract for each sale, and then, the entry on each contract of the payment made on each contract. The provision contained in each contract which gave the seller the right to apply each payment .made on any contract in his possession, at his discretion, was in conflict with the statutory provision. It created a right in the seller which was inconsistent with the right created in the buyer by St. 1937, c. 315.
This provision of the contracts, however, was in no way a material part of the sale of the goods, or of the prices to *100 be paid for them, or of the rights given the several parties if the performance of the other parts of the contract were regularly performed. This aspect of the contract between the parties remained the same even if this particular clause should be eliminated. Its nature and its materiality are best guaged by what actually happened. The buyer was liable on four contracts, and each time he went to make payments, he carried with him the receipt book for each of the four contracts and the payments were entered in four amounts, one on each book. This definitely points out how important the questioned clause was to both seller and buyer, and, as well, it illustrates the entire absence of fraud and bad dealing on the part of the seller.
Not every statute which prohibits or forbids specified transactions thereby renders void every contract in which the forbidden transactions are a part.
In Rogers & Co. v. Simmons, 155 Mass. 259, at 260, the Supreme Judicial Court, in speaking of a statutory provision which required every foreign corporation doing business in Massachusetts to appoint the commissioner of corporations its attorney upon whom service might be made, said,
“The contention is that any business done by a foreign corporation without first filing the papers required by the statute is illegal, and that our courts will not aid such a corporation in the enforcement of contracts or the protection of alleged rights founded on such transactions.
“But we are of opinion that these provisions are directory merely, and that, while a failure to comply with them subjects the officers and agents of the corporation to severe penalties, it will not invalidate its contracts or deprive it of the right to sue in our courts.” National Fire Ins. Co. v. Pursell, 10 Allen 231, at 232. Larned v. Andrews, 106 Mass. 435, at 437, 438. Vowditch v. New England Mutual Life Ins. Co., *101 141 Mass. 292. Chase’s Patent Elevator Co. v. Boston Tugboat Co., 152 Mass. 428, at 432. Fox v. Rogers, 171 Mass. 546, at 547. Huey v. Parsareeli, 267 Mass. 578, at 580, 581, 582. Brownell v. Nason, 270 Mass. 490, at 495, 496.
‘ ‘ The statute is to be read as a whole to ascertain the legislative purpose, and, unless it is necessary to hold the contract void in order to accomplish that purpose, the inference is that the statute was not intended to be prohibitory of the contract.” Barriere v. Depatie, 219 Mass. 33, at 36.
The foregoing quotation agrees in principle with the statements of the law in such cases to be found in the Restatement of the Law of Contracts, Section 600, and the Restatement of the Law of Restitution, Section 140b.
There is, however, another ground upon which the plaintiff is entitled to recover. It has long been the law in this Commonwealth that the illegality of the plaintiff’s contract does not necessarily mean that the plaintiff loses his property which is involved in the performance of the contract. This principle is first clearly stated in Dwight v. Brewster, 1 Pick. 50, at 54,
“The principle settled is that a party to an unlawful contract shall not receive the aid of the law to enforce that contract or to compensate him for the breach of it. It is not easy however to discern how a party to such a contract, who has become possessed of the property of the other party, with which he is to do something which the law prohibits, can acquire a right to that property. The contract being void, the property is not changed. * * * if he has it in his possession, he must be liable for the value of it; so that in an action of trover, with proper evidence of a conversion, the plaintiff would undoubtedly prevail.” Fisher v. McGerr, 1 Gray 1, at 46, 47, 48. Breck v. Adams, 3 Gray 569, at 570. Commonwealth v. Coffee, 9 Gray 139, at 140. Myers v. Meenrath, 101 Mass. 366, at 369. Boaraem v. Crane, 103 Mass. 522, at 523. Hall v. Corcoran, *102 107 Mass. 251, at 256, 257, 260. Harris v. Woodruff, 124 Mass. 205.
The principle running through these cases culminated in the case of Pelosi v. Bugbee, 217 Mass. 579, heard in 1914, the facts of which were that the plaintiff, a peddler, sold a diamond ring upon a conditional sale, the sale of jewelry by peddlers being expressly prohibited: The purchaser of the ring pawned it to a pawnbroker, the defendant, who refused to deliver it to the plaintiff. The action was tort for conversion. The court said, at pages 581 and 582:
“It is well settled that, as a general rule, contracts made in violation of the provisions of a statute cannot be enforced. For this reason the law gives no remedy for the breach of a contract made upon Sunday, or upon a gaming or wagering contract. In certain cases it has been held that contracts made in violation of the provisions of statutes are not void on the ground that the provisions of the statutes are intended to be only directory, and not conditions precedent to the validity of contracts made with reference to them. Bowditch v. New England Mutual Life Ins. Co., 141 Mass. 292. . . . The plaintiff in the case at bar, however, is not seeking to enforce any rights under the illegal contract with Tedesco (the purchaser) but seeks to recover the value of the ring, to which he claims title, and which has been converted by the defendant. The agreement between the plaintiff and Tedesco provided that the title to the ring should remain in the plaintiff till paid for, and while this agreement was void and could not be enforced by either party to it because of its illegality, yet the title to the ring was not changed thereby. It still remained in the plaintiff, whose title was not affected by the delivery of possession of the ring to Tedesco. The plaintiff’s general property in the ring did not arise from the illegal contract, nor was it determined by it. The action is based upon the conversion by the defendant of the plaintiff’s property and is wholly independent of the contract between the plaintiff and Tedesco. It is true that the delivery of the posses *103 sion of the ring to Tedeseo was under an unlawful agreement which could not be enforced, yet that fact does not affect the liability of the defendant for his wrongful act in converting to his use the plaintiff’s property. This distinction is recognized in Hall v. Corcoran, 107 Mass. 251. It is clear upon principle and an authority that while the plaintiff cannot enforce the illegal contract, he may maintain an action for conversion.”
This decision, following as it does the line of reasoning in Dwight v. Brewster, 1 Pick. 50, Meyers v. Meinrath, 101 Mass. 366 and Hall v. Corcoran, 107 Mass. 251, seems definitely to have established that where the seller has a title which is independent of an illegal contract and does not depend upon it, he can recover his property in the case of a conversion, even though the title of the one who has converted it depends upon the illegal contract. See Bauer v. Bond & Goodwin Inc., 285 Mass. 117, at 119.
A recent case, however, is somewhat in conflict with Pelosi v. Bugbee, supra. That ease is Lehan v. North Main Street Garage, Inc., Mass. Adv. Sh. (1942) 1761, decided December 28, 1942, in which the plaintiff had sold an automobile on conditional sale to one Gewglas, who resold it to the defendant before Gewglas had fully paid for it. The conditional sale violated G. L. (Ter. Ed.) C. 255, Section 13A, which had been added to the Chapter by St. 1939, C. 509, Section 1, in that it did not contain a provision that in case of a repossession and sale of the property conveyed by the conditional sale agreement, all sums paid on account of the purchase price and any sum remaining from the proceeds of a sale of the repossessed property, after deducting the reasonable expenses of the sale, shall be applied on the purchase price, any balance over the purchase price thus reduced to be paid to the vendee.
The court decided the case on the wording of Section 13A, which begins with the clause “No instrument evidencing a *104 conditional sale of personal property shall be valid.” It pointed out that if it followed the reasoning in Pelosi v. Bugbee, 217 Mass. 579, the effect of its decision would be to strengthen the claim of the vendor and increase the hardship of the vendee who would be in a worse condition than before and would have none of the protection intended by the statute. It held that the only way in which thq vendee could be benefited was by holding that so much of the instrument as evidenced the condition of such a sale is not valid. In this manner it reconciled the intent of the legislature with the situation which the court found to exist in Pelosi v. Bugbee, 217 Mass. 579, by destroying the seller’s security title, leaving him only an action for the price or the unpaid price.
The main issue in this case is whether it is to be decided on the principle of Pelosi v. Bugbee, or that of Lehan v. North Main Street Garage Inc. There is, however, this vital difference between the cases. Pelosi v. Bugbee is the expression of a line of reasoning which is well founded in time and example. It doubtless would have governed Lehan v. North Main Street Garage, Inc., were it not for the fact that the court had to deal with a new factor, the interpretation of the words, “No instrument evidencing a conditional sale of personal property shall be valid.” In order to give proper effect to those words, it had to hold that they prevented the application to the facts of that case, of the principle enumerated by Pelosi v. Bugbee. Such an application is required, however, only because those Words are a factor. The application of the principle of the earlier case, is proper in all other cases where such a factor does not control.
We are of opinion that the instant case is decided by Pelosi v. Bugbee, and falls within the class of such cases as Dwight v. Brewster, 1 Pick. 50. Meyers v. Meinrath, 101 *105 Mass. 366. Hall v. Corcoran, 107 Mass. 251. The provisions of the contract are within the scope of those cases which treat as directory statutory provisions such as found here and are represented by Larned v. Andrews, 106 Mass. 435, at 438, 439. Bowditch v. New England Mutual Life Ins. Co. 141 Mass. 292. Chase’s Patent Elevator Co. v. Boston Towboat Co. 152 Mass. 428, at 432. Barriere v. Depatie, 219 Mass. 33, at 36. Huey v. Passarelli, 267 Mass. 578, at 580, 581, 582. Brownell v. Nason, 270 Mass. 490, at 496.
Section 13A, of G. L. (Ter. Ed.) Chapter 255, the interpretation of which is the basis of the decision in Lehan v. North Main Street Garage, Inc., Mass. Adv. Sh. (1942) 1761, was added to the General Laws by St. 1939, c. 509. The latter statute also rewrote Section 13C, added to Chapter 255 by St. 1937, c. 315, and left it as a new Section 12 of that chapter. Section 12, thus rewritten, deals with the matter of one contract for each sale in more detail than did St. 1937, c. 315, and goes on to provide a defense for the vendee if he is sued for finance charges and fees which are not included in the contract. St. 1939, c. 509, then introduces some sections which are made a part of Chapter 255. Only one of the sections, rewritten or added, Section 13A, contains the words, “No instrument evidencing a conditional sale of personal property shall be valid. ’ ’ It would seem, therefore, that a violation of Section 13A is the only violation which the Legislature considered important or material enough to make void the entire contract, or the security title created by the contract, as the court interpreted it. Those words are not to be found in Section 12, which is the continuation of the original St. 1937, c. 315.
It ought to be pointed out that Lehan v. North Main Street Garage, Inc., Mass. Adv. Sh. (1942) 1761, does not declare the entire conditional sales contract void. Because *106 of the fatal words in Section 13A, it declares the vendor’s security title void, but it leaves the vendee liable on his contract to pay. The logical development of the reasoning in that case is that the security title would have been held good but for the wording of Section 13A, and that only so much of the contract is interfered with as is necessary to make effective that particular provision.
It is to be noted, also, that it is the defendant who raises the defense of illegality, that the plaintiff has made out a case without relying upon any illegal feature of the contract and that under the early cases, the one,, in pari delicto, who raises the issue of illegality gets no assistance from the court whether plaintiff or defendant. Here the defendant introduces it; being equally a maker of the contract which he now says is illegal, the illegality is of no avail to him. In Meyers v. Meinrath, 101 Mass. 366, at 370, the court said:
“the parties are in pari delicto, and, by refusing to aid either party in the attempt to restore himself to his former position, we leave him in the condition in which he has placed himself by his own illegal conduct, that, as we understand it, is the aim of the courts in applying the general rule upon this subject.” King v. Green, 6 Allen 139. Commissioner of Banks v. Chase Securities Corp., 298 Mass. 285, at 322.
What has been said demonstrates that there was no prejudicial error in the action of the trial judge, either in overruling the defendant’s demurrer, or in his dispositions of the requested rulings, or in any ruling made by him. The report is to be dismissed.

 The trial court’s rulings and findings on each of plaintiff’s requests are printed in italics following the request.